Luretha GADDIS, individually, on behalf of her minor children, and on behalf of all other persons similarly situated, Plaintiff,

v.

George K. WYMAN, individually, and as Commissioner of the Department of Social Services for the State of New York, and Louis P. Kurtis, individually, and as Commissioner of Westchester County Department of Social Services, Defendants.

No. 69 Civ. 2921.

United States District Court
S. D. New York.

Aug. 5, 1969.

See also, D.C., 304 F.Supp. 717.

Legal Aid Society of Westchester County, for plaintiff; Bernard Clyne, and Antone G. Singsen, III, White Plains, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendant Commissioner Wyman; Samuel A. Hirshowitz, First Asst. Atty. Gen., and Maria L. Marcus, Asst. Atty. Gen., New York City, of counsel.

MANSFIELD, District Judge.

In this class action which was commenced on July 3, 1969, plaintiff, who is an applicant for public assistance pursuant to the federal-state program for Aid to Dependent Children, attacks the constitutionality of § 139-a of New York Social Services Law, McKinney's

Consol.Laws, c. 55, and seeks the convening of a three-judge court, injunctive relief and a declaratory judgment. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 2281, 2284, 2201, 2202, 1331, and 1343, and 42 U.S.C. § 1983.

Prior to the commencement of the action plaintiff was denied public assistance by the Westchester County Department of Social Services on the ground that she had failed to satisfy § 139-a which requires social service officials to deny public assistance to any person who applies for such assistance within one year of his or her arrival in the state unless the applicant can establish "by clear and convincing proof that the purpose of his or her entry was not for the purpose of securing public assistance and care in this state." [1] Plaintiff contends that the section denies to her and all members of the class she sought to represent the equal protection of the laws and the right to travel guaranteed by our Federal Constitution. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)

On July 7, 1969 plaintiff's attorney was informed that despite § 139-a plaintiff would thereafter receive assistance. As a result of this change in circumstances defendant Wyman, on July 15, 1969, moved to dismiss the complaint on the ground that the case was moot. Conceding that plaintiff Gaddis' interest in the litigation had been substantially affected by the Social Service Department's decision to give her aid despite § 139-a, plaintiff's attorney moved, on July 18, 1969, for intervention on behalf of three additional applicants for assistance who had moved to New York within a year, and continued to press for the relief originally sought by plaintiff and the purported class; a temporary restraining order, convocation of a three-judge court, preliminary injunction and a class action order.

■ We must first rule upon defendants' contentions that the case has become moot and therefore incapable of supporting any additional plaintiffs who seek to intervene. The contention rests upon the assumption that in order to have a class action at least one named

---

1. Section 139–a was amended in the spring of this year so as to make it more vulnerable to the current attack on its constitutionality. The section now reads:

"§ 139–a. Special provisions to avoid abuse of assistance and care

"1. Any person who shall apply for home relief or aid to dependent children within one year after arrival in this state, shall be presumed to have come into the state for the purpose of receiving public assistance or care and the social services official where application is made, shall deny public assistance and care to such applicant unless such applicant shall establish by clear and convincing proof that the purpose of his or her entry was not for the purpose of securing public assistance and care in this state. In addition to complying with the foregoing provisions, the applicant shall also submit with his or her application a certificate from the appropriate local employment office of the state department of labor issued within a two-week period from the date of his or her application stating that such employment office has no order for an opening in part-time, full-time, temporary or permanent work of any kind to which the applicant could properly be referred by such office, taking into consideration only his or her physical and mental capacity without reference to his or her customary occupation or acquired skill.

"2. The social services official shall in every case complete his investigation and make his determination of the application under this section not more than thirty days after receipt of the application."

Prior to this spring's amendments to the Social Services Law, § 139–a did not contain a presumption of "welfare abuse" aimed at newly arrived New York residents. On the contrary, under the old statute the welfare official was required to have reason to believe that an applicant for public assistance came into the state to receive public assistance before the official could conduct an investigation as to whether an applicant for relief had come to New York with the purpose of becoming a part of its welfare rolls.

plaintiff must continue to be a representative of the purported class. Since Gaddis, the only named plaintiff, is no longer a representative of that class, defendant argues that the entire action must fall. When the action was commenced, however, Gaddis *was* properly a representative of the purported class. To say that the whole action is mooted simply because it may be moot as to the named plaintiff would be contrary to the expressed purpose of Rule 23(e), which prohibits dismissal or compromise of a class action if the result would be to injure the other members of a purported class.

■ Defendants are not aided in their argument by the fact that a court has never determined that a class in fact exists, for "during the interim between filing and the 23(c) (1) determination by the court, it must be assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until a contrary determination is made under 23(c) (1)." Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324, 326 (E.D.Pa.1967); and see Berger v. Purolator Products, Inc., 41 F.R.D. 542 (S.D.N.Y.1966) (Bryan, J.) (motion for court approval of settlement of class action brought along with a motion to determine whether the purported class action was a proper class action). A holding that an action commenced as a class action retains that character until a court finds otherwise is supported by the Advisory Committee's note on the 1966 amendments to Rule 23. The Committee said:

"An order embodying a determination can be conditional; the court may rule, for example, that a class action may be maintained only if the representation is improved through intervention of additional parties of a stated type. A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound. A negative determination means that the action *should be stripped of its character as a class action.*" Advisory Committee's Notes reprinted at 39 F.R.D. 69, 104 (1966) (Emphasis added)

Therefore, no class determination having been made at the time that the motion for intervention was made, a class action must be presumed to have existed at the time of the filing of the motion for intervention.

■ The motion to intervene was filed pursuant to Rules 23 and 24, F.R. Civ.P., by Willa Jean Manning, Annie Bell McAllister and Ruth Mickle. Applicant McAllister came to New York in late August 1968 with her husband and family. Shortly thereafter her husband deserted her leaving her with five children to feed and clothe. In February of 1969 she was granted public assistance but after § 139-a was amended she was removed from the relief rolls as the presumption became, under the new law, that she had come to New York for the purpose of receiving public assistance. Only after her attorney was successful in getting the Social Services Department to schedule a hearing in regard to her rights was Mrs. McAllister returned to the welfare rolls. As a consequence of this presumption she was left for 10 days without aid to which she could turn to for the purposes of feeding her family. As she will remain subject to the provisions of § 139-a until the end of August, 1969, she is subject to possible further cutoffs and is a proper representative of the class which she seeks to represent upon intervention.

Applicant Manning arrived in New York on July 6, 1969, and applicant Mickle arrived on or about June 14, 1969. Both are living with relatives, allege to have come to New York for purposes other than receiving welfare, and both are in need of public assistance which has been denied to them allegedly because of the operation of § 139-a. Both of these intervenors are therefore properly representative of the class

on whose behalf Mrs. Gaddis brought this action.

As Mrs. Gaddis' interest in this action has diminished with the Department's change of position in her case (coupled with the fact that because of the delays in this action she may no longer be subject to § 139-a because she came to New York in August of 1968), intervention in this class action by persons properly members of the class should be permitted to protect the interests of the class and the intervenor applicants who are no longer "adequately represented by existing parties." Rule 24(a), F.R.C.P. Therefore applicants Manning, McAllister and Mickle will be permitted to intervene in this action.

■ Defendant Wyman's motion to dismiss the complaint as moot is denied, since the intervenors represent the interests of the class of which they are members. Under such conditions this Court should hesitate to declare the action moot. "Judicial determination of questions of this importance cannot thus be evaded and, in any event, dismissal is not appropriate when the individuals purport to represent a class." Kelly v. Wyman, 294 F.Supp. 887, 891 (S.D.N.Y.1968) (Bryan, J., convening a three-judge court); and see opinion of that three-judge court per Feinberg, C. J., Kelly v. Wyman, 294 F.Supp. 893, 908 (S.D.N.Y.1968). Further, an attack on § 139-a has just been made in the Western District of New York where a three-judge court has been convened.[2] There also the Department has moved to dismiss for mootness after making a similar change in position resulting in the plaintiff there now receiving aid despite § 139-a. Such repeated efforts by the same party to defeat adjudication are not viewed favorably. "Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W. T. Grant, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1952).

This brings us to the merits of plaintiff's request for relief and the question of whether the constitutional issues presented by the complaint are substantial. The major issue raised by the complaint can be clearly defined: does § 139-a of New York's Social Services Law, by virtue of its presumption of welfare abuse on the part of applicants who have not been New York residents for a year or more, and denial of assistance to those unable to rebut the presumption, deny equal protection of the laws and the right to travel guaranteed by the Federal Constitution?

In its recent decision in Shapiro v. Thompson, *supra*, the Supreme Court held unconstitutional statutes which operated to deny public assistance to persons solely because they had not resided for more than a year within the jurisdictions governed by such statutes (Connecticut, Pennsylvania, District of Columbia). New York's new statute does not automatically deny such persons aid, but presumes that recent arrivals came to New York for the purpose of securing assistance and places upon them the burden of proving that they did not. The only justification thus far advanced for the imposition of the burden is the prevention of welfare abuse, i.e., a budgetary consideration. *Shapiro* rejected residence requirements as a device to preserve the fiscal integrity of a state by impeding the migration of the needy, and held that such requirements unreasonably burdened the constitutional right to travel. The same questions are raised here. In addition, a substantial constitutional issue is presented as to whether New York can even deny assistance to persons who clearly enter the state solely to take advantage of its public assistance programs.

---

2. A three-judge court has also been applied for in a similar action attacking the constitutionality of § 139-a in the Northern District of New York.

"More fundamentally, a State may no more try to fence out those indigents who seek higher welfare benefits than it may try to fence out indigents generally. Implicit in any such distinction is the notion that indigents who enter a State with the hope of securing higher welfare benefits are somehow less deserving than indigents who do not take this consideration into account. But we do not perceive why a mother who is seeking to make a new life for herself and her children should be regarded as less deserving because she considers, among other factors, the level of a State's public assistance. Surely such a mother is no less deserving than a mother who moves into a particular State in order to take advantage of its better educational facilities." Shapiro v. Thompson, 394 U.S. 618, 631–632, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969)

Plaintiff also seeks a class action order pursuant to Rule 23(c) (1), F.R.C.P. As little proof has been presented on this question and the case appears to warrant the convening of a three-judge court, we need not make such a determination at this time. While no proof of the number of persons in the class has been presented, it is apparent by the readily available intervenors in this action and the existence of a similar action in the Western District of New York that a class of significant size may exist. Since there is little or no issue as to the existence of the other prerequisites of a class action, this case shall, unless the three-judge court to be appointed determines to the contrary, be treated for all purposes as a class action.

Finally, plaintiffs have requested a temporary restraining order requiring defendants to cease denying them aid through the operation of § 139-a until a final determination of this action. As § 350-j of New York's Social Services Law provides for emergency assistance to needy families for 30 days regardless of their qualifications for permanent assistance, it does not appear that plaintiffs will suffer irreparable injury unless a temporary restraining order is issued. Consequently, this motion is denied without prejudice to its renewal before the three-judge court to be appointed if at any time it appears that emergency relief is not available to plaintiffs or members of their class.

It is so ordered.