Sidney **ROTHMAN**, in his own right and on behalf of all other persons similarly situated with respect to the common stock of Gale Industries, Inc., Plaintiff,

v.

Howard **GOULD** et al., Defendants.

No. 68 Civ. 4173.

United States District Court,
S. D. New York.

April 27, 1971.

Supplemental Opinions May 18, 1971
and June 22, 1971.

Memorandum Opinion July 14, 1971.

Bennett Frankel, New York City, for plaintiff.

White & Case, New York City, for defendant Samuel Insull, III.

Golenbock & Barell, New York City, for defendants, Gale Industries, Inc., Wm. Gluckin, Ltd., Howard Gould, Gerald Gluckin, Edwin W. Gluckin and David Shinefeld.

Leaf, Kurzman & Deull, New York City, for defendant, Quentin R. Krantz.

FRANKEL, District Judge.

The plaintiff, represented by skilled and experienced counsel, sued under the Securities Exchange Act of 1934 claiming damages from transactions in the stock of Gale Industries, Inc., because of a variety of manipulative and deceptive devices allegedly employed by various of the defendants. Among his claimed losses plaintiff included some incurred in short sales of Gale stock. A second count of his complaint undertook to plead the cause as a class action "on behalf of all persons similarly situated who were 'short' or who are 'short' of Gale stock or who have been damaged by defendants' acts * * *."

Now, after much skirmishing during the period of more than two years since the complaint was filed, plaintiff has moved "for an order under Rule 23 (c) of the Federal Rules of Civil Procedure determining that this action is not to be maintained as a class action * * *." In an affidavit supporting the motion, it is reported that plaintiff has a settlement offer of $13,000 for himself individually; that his losses from the transactions complained of were approximately $40,000; and that it is his "wish" to erase the class claims he formerly asserted so that the settlement may be consummated.

Not surprisingly, the motion is unopposed. It will not be granted, however, in the swift and unnoticed way the parties would evidently find agreeable.

In response to the court's initial expressions of concern about the plaintiff's delayed conclusion that he would prefer to represent only himself, counsel has filed a supplemental affidavit and a memorandum of law. These papers report, *inter alia*, the view that it is, after all, "impossible" for plaintiff to establish the existence of a suitable class. Moreover, counsel says, the "class allegations [in the complaint] appear to be no more than an afterthought." This characterization of his own complaint is said to rest upon the appearance of the class allegations in a separate, second count.

Pressing further this refutation of his initial claim that there was a class for him to represent, plaintiff's counsel speaks throughout of the improbability that there could be a large number of "short sellers [who] suffered his bad timing and ended up with a loss." But the class he sought to represent in his complaint included those caught short "or who have been damaged by defendants' acts," and nothing whatever is now said about the latter, broader segment thus alleged for inclusion long ago.

Even apart from that possible discrepancy, plaintiff's second thoughts, flatly opposed to those he has stood upon for over two years, are not to be accepted unquestioningly merely because there is no one before the court to resist them. It must be presumed, or at least firmly expected, that responsible lawyers, before they put their names to class allegations, will have made some minimally careful explorations to satisfy themselves of the *prima facie* existence of a class, a claim on behalf of the class, and their suitability to present themselves in the fiduciary role of class representatives. See Weinstein, Revision of Procedure: Some Problems in Class Actions, 9 Buffalo L.Rev. 433, 435 (1960). In the face of that expectation, and with no showing either of further researches or of changes in any pertinent circumstances affecting the putative class, counsel will not be allowed to forget the whole business on

the mere assertion that it was a mistake to begin with.

There is too much at stake for that, quite apart from the concern to discourage impositions upon the court itself.[1] The very bringing of a class action, especially where counsel are known to be skilled in the field, may deter the institution of suits by members of the ostensible class. The passage of time may impair or defeat the rights of others thus deflected from acting for themselves. The absence of intervenors is scarcely a complete solvent of these concerns.[2] Rule 23(b)(3) and (c)(2) contemplate representation of class interests like those initially asserted in this case without any action whatever by the class members.

In a word, having nominated themselves as class representatives, both plaintiff and his counsel have undertaken responsibilities, and triggered possible consequences, that may not now be erased by routine acceptance of the resignation they now tender. It is necessary at least that some decent notice be given to those plaintiff purported to represent so that such members of what was once said to be a "class" may appear, if they wish, to oppose the present application, seek to be substituted as representatives or take other steps appropriate for protection of their interests.[3]

The form and contents of an appropriate notice are matters upon which the court will require guidance. The setting is not the familiar, and therefore comfortable, alignment of adversary interests; nobody before the court speaks now for the erstwhile class, which is said, indeed, to have been imaginary all along. But it is confidently expected that all counsel, serving as public men not less than advocates, will give the court the benefit of their objective wisdom as well as their familiarity with the concrete facts of the litigation before us.[4]

Within twenty (20) days from today, all parties are to submit through counsel their proposals as to the handling of notice in accordance with the views stated herein. The submissions are to include actual forms of notice describing:

(1) the history and nature of this action;

(2) the original claims;

(3) the original description of the alleged class;

(4) the terms of the proposed settlement;

(5) plaintiff's present motion and its asserted justification; and

(6) the possible rights, procedural and substantive, of others who may now seek to intervene or be substituted for plaintiff.

Following these presentations, the court will order such further hearing or

---

1. As Judge Fullam observed in a thoughtful opinion, "no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants. Under the present Rule 23, an allegation of class representation is attended by serious consequences." Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324, 328 (E.D.Pa.1967).

2. Plaintiff's counsel reports his retainer by one potential intervenor, and says that with this person's "acquiescence [he] refrained from intervening him as a plaintiff since it was not apparent that such action would advance the lawsuit."

3. Rule 23(e) requires that notice be given to the class when a class action is dismissed or compromised. Although this case has not been formally declared a class action under Rule 23(c)(1), the mere allegations may have had substantial effects like those suggested earlier, and requiring notice seems entirely appropriate. Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324 (E.D.Pa.1967).

4. Should such expectations be disappointed, in this or other cases, the court may find it necessary, in the experimental development of Rule 23, to call upon such officials and agencies as the Securities and Exchange Commission or the United States Attorney for representation of interests potentially affected.

other proceedings upon the plaintiff's motion as may then seem appropriate.

## SUPPLEMENTAL MEMORANDUM

### May 18, 1971

In response to the court's opinion of April 27, 1971, interesting, and potentially troublesome, presentations have been filed for various defendants (Gale Industries, Inc., Wm. Gluckin, Ltd., Howard Gould, Gerald Gluckin and David Shinefeld) and for plaintiff. These defendants advise that in light of the court's opinion, they will not proceed with the settlement heretofore contemplated. Plaintiff's counsel advises that in another reversal of position, he now intends "in the next few weeks to make a motion for a class determination." He adds: "If the action is determined to be a class action, it is my intention to prosecute it vigorously."

The case has been pending for over two years. Under our local Civil Rule 11A, both sides have obligations to see that actions arguably for or against a class are brought on for reasonably prompt decision as to their possible class character.* It appears that both sides may have been in default for some time. The court in turn owes a duty to see that matters of this nature, potentially affecting groups far more numerous than the immediately present litigants, are handled with reasonable expedition.

Accordingly, the motion plaintiff proposes will be made returnable not later than June 8, 1971. Upon the proposed reference to the undersigned, the matter will be reached and resolved as speedily as possible.

So ordered.

---

* The local rule, effective since April 30, 1970, requires the party who files a pleading asserting a claim for or against a class to move within 60 days for a determination "as to whether the action is to be maintained as a class action * * *." If such a party defaults in the obligation to make such a motion, the rule goes on to provide that "the opposing party shall move, within thirty (30) days after expiration of the time allowed for such motion, to dismiss the action as a class action."

## OPINION—June 22, 1971

Plaintiff has filed his formal motion reverting to his original claim that this is a class action. He seeks an order under Fed.R.Civ.P. 23(c) determining the propriety of this revived stance. He purports to find unexpected support, and ground for revising his original theory, in this court's observations last April when his motion to drop the class allegations was held insufficient in the absence of notice to persons conceivably exposed to prejudice by the allowance of such an abandonment. Plaintiff now says of the April decision:

"Study of the Court's opinion indicates that a class exists consisting of all persons who purchased the common stock of Gale Industries, Inc. between July 11, 1967 and October 9, 1968 (Complaint ¶¶2 and 8) and thereby sustained losses irrespective of whether they were long or short of the stock. I had not read or intended paragraph 37 of the Complaint to cover 'longs'. I always regarded the class as limited to 'shorts', but the Court's opinion that the class include 'all persons * * * who have been damaged by defendants' acts' is binding and logical. Accordingly the class would not be limited to a few disappointed shorts but includes everyone who bought Gale stock between July 11, 1967 and October 9, 1968 and sustained a loss on the purchase. During this fifteen month period Gale's stock was actively traded on the American Stock Exchange. Slightly over ten million shares changed hands between July 11, 1967 and October 9, 1968.

"There would therefore certainly appear to be sufficient individuals involved to constitute a large class once

the Court's definition of the class is applied." [1]

Defendants respond that this court, totally ignorant of the pertinent facts, could not have known (as it is still unable to know) whether there was any class of any kind, large or small, that plaintiff might fairly be held to represent. Defendants go on to argue, again persuasively, that plaintiff was correct in the second of his variable positions—i. e., when he urged dismissal of the class action allegations—and that the court should now grant his earlier motion seeking that result. They point out that plaintiff, as a short-seller, could never have represented the fundamentally opposed interests of the "longs." They affirm now that, as plaintiff said in his prior motion, there is probably no sufficient number of "shorts" to comprise a class. And they tender their own cross-motion to dismiss the class allegations.

This brings us almost full circle. When plaintiff first sought such a dismissal, these defendants acquiesced in total silence. At that time, however, they stood prepared to pay plaintiff $13,000 in settlement. When the court held unwise and improvident a dismissal of the class claims without notice, and solicited the help of all counsel with a formulation of a suitable notice, these defendants supplied no such help whatever. They merely reported their decision to renege on the settlement offer.

The court finds itself once more in the abnormal and not wholly comfortable position of being unable to agree fully with either side. There is much to be said for plaintiff's abandoned view, now embraced by defendants, that this is not a proper class action. Surely, an untutored remark by this court, made when no class-action determination was being rendered, could not support plaintiff's new view. And, whether or not a plaintiff class may yet be discovered, defendants are on solid ground when they question the suitability of this changeable plaintiff as a representative.

While the likelihood of continuing this as a class action does not seem profound at this time, the question remains open. Whether or not plaintiff should be permitted to speak for the alleged class, it is possible that some other or others could properly fill that role. If, on the other hand, the class allegations may ultimately be dismissed without proceeding further upon them, the concern expressed by the court on April 27, 1961, remains a live one—namely, that such a termination be declared only after notice to those who might have grounds to oppose it.

Subject to revision based upon the wisdom hereinafter solicited from counsel, the court is disposed now to proceed as follows: We will require some reasonable form of notice of the opposed views now presented. The notice will report plaintiff's initial class theory, his motion thereafter to drop the class claim, his renewed efforts to press the claim, and defendants' resistance to the latter course. Persons desirous of intervening will be given an opportunity to do so, including an opportunity to argue for substitution in plaintiff's stead as class representative. As to the form of notice, considering all the circumstances (including the absence of any defined class), it seems likely that publication in one or two appropriate newspapers in two or three successive weeks will be sufficient. As to the expense, it seems fitting in all the circumstances to place the burden, at least for the time being, upon the defendants, who never made a timely motion under our Civil Rule 11A(d) to dismiss the class action count,[2] who were

---

1. Affidavit of Bennett Frankel sworn May 19, 1971, 1–2.

2. See footnote, *ante*, in the court's memorandum of May 18, 1971. The suit was

prepared a while ago to pay plaintiff $13,000, who have changed their minds about that, but who still endorse his erstwhile attempt to end the class proceeding.[3] It will remain open for defendants to seek recovery of such expenses if and when that may seem fair and appropriate at some later stage of the litigation.

As stated at the outset of the preceding paragraph, the court will postpone issuance of directions concerning notice and related matters until counsel have given us the benefit of their learning. Counsel on both sides are now to proceed without fail to exchange and submit forms of proposed notice, together with their views on mode of publication, costs, and any other pertinent matters. These materials are to be filed by noon on July 6, 1971. On July 12, 1971, at 11:30 a. m., counsel will be heard on any issues posed by such submissions. As promptly as possible thereafter, the court will issue its order thereon.

## MEMORANDUM—July 14, 1971

The parties have filed proposals in compliance with the court's memorandum of June 22, 1971. The notice eventuating from those submissions and subsequent discussions is set out as an Appendix to this final entry in this series of memoranda. It may be of interest, however, to record one or two developments and observations.

The defendants, while dutifully (and helpfully) submitting a draft form of notice, argue that "the proposed notice * * * is contrary to the letter and spirit of Rule 23 and is not supported by any reported case authority * *." Noting the substantial possibility that the case will not go on as a class action under the auspices of the present plaintiff, they say such a notice "could lead to the spector [sic] of unnecessary litigation." They say it is improper and incongruous to require notice where "there has not even been a threshold showing that an appropriate class exists." And they urge that the notice is unnecessary in any event because the case "has received widespread publicity" so that "it is reasonable to assume" anyone interested in intervention would have turned up before now. At least one or two of these points have substance. They do not, however, individually or collectively, persuade the court against requiring at least the minimal notice now to be ordered.

As to the letter of Rule 23, subdivision (d) (2) says the court "may make ap-

---

filed on October 22, 1968, some six months before the effective date of our Rule 11A. Defendants mention, but only to pretermit, some thought about whether the Rule "has retroactive effect and applies to previously commenced actions." The court shares the view that the subject is not interesting; it is not important whether it would be "retroactive" to require that defendants seek a definitive ruling on the class-action question during the first two years after Rule 11A. became effective. It is enough for our purposes that defendants tacitly joined in the attempt to have the class claim dismissed; that they are in substance pressing that attempt in the wake of plaintiff's reversed position; and that the considerations requiring notice, along with the incidents of the requirement, are fairly made defendants' concern for the time being.

3. The situation before us does not fall neatly within any precise category. It is not yet—it may never be—a class action, held maintainable as such, in which the plaintiff might normally bear the expense of notice to class members. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568 (2d Cir. 1968). It is not—though it was when plaintiff first moved to dismiss the class allegations— a case of proposed dismissal or compromise for which Fed.R.Civ.P. 23(e) prescribes notice "to all members of the class in such manner as the court directs." Within the principles governing the several categories, but subject to such further and better learning as counsel may supply, the court finds basis for the disposition now being proposed.

propriate orders \* \* \* requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action \* \* \*." Defendants correctly cite this as "[p]resumably" supplying a basis for the notice this court will require. Plaintiff observes that the quoted provision "explicitly gives the court that power." For once, the court is in essential agreement with plaintiff. It may be that the precise power now asserted by the court is not "explicitly" embraced within the language; at least, words more apt are imaginable. But the court —considering the general character of the Rule, its central objectives and the kinds of discretionary administration it contemplates—finds ample support in the text for the present ruling.

As to the "spirit," the court has attempted, obviously with not more than partial success at best, to explain before now why the evolving positions of the parties before us seem to require a precautionary notice to people who might be adversely affected if the class allegations were allowed simply to disappear in silence at this stage. Some of defendants' other thoughts prompt brief enlargement upon this view.

Defendants are correct, of course, when they note the absence of even a "threshold showing" of an appropriate class. What we have had, however, is a combination of events making that less than decisive against the need for notice:

(1) a plaintiff blowing hot and cold; [1]

(2) a proposed settlement tied to an agreed erasure of the class allegations; and, by the same token,

(3) no knowledgeable and truly "vigorous" (see note 1, *supra*) attempt to sustain those allegations.

In these circumstances, characteristically dependent upon truly and steadfastly adversary presentations, the court has never been placed in a position where it could confidently make the "threshold" judgment whether this is properly maintainable as a class action.

Defendants observe that their position, unlike plaintiff's, has never varied; they have always viewed the class allegations as baseless. Unfortunately, though our Civil Rule 11A requires early assertion of such a position, defendants neglected to convey it to the court until after they had negotiated an individual settlement with plaintiff, allowed plaintiff to seek approval of that settlement by himself and then learned that the approval would not be forthcoming—at least not yet. With all that water over the dam, the court could not and cannot be assured that everything possible had been said on both sides of the issue of class action *vel non*. Does this mean that defendants may never settle an individual claim when it is brigaded with a purported class suit by the claimant? No such awful generalization seems acceptable. But it may mean that interdependence of the individual settlement and a class dismissal must be deemed always

---

1. The temperature seems, by the way, to have undergone another abrupt change. On May 19, 1971, when the settlement proposal and abandonment of the class action had fallen through, plaintiff's counsel filed an affidavit announcing he would pursue the class claim after all and that he was "prepared to carry on this litigation vigorously." A motion reflecting that purpose was filed, defendants opposed, and the court was led to the position announced in its memorandum of June 22, 1971, *ante*. In a second affidavit responding to that memorandum, sworn July 1, 1971, plaintiff's counsel now states as central "facts" that "plaintiff \* \* \* has no stomach for the litigation" and is "primarily interested in his $40,000 individual claim \* \* \*."

suspect, and perhaps never suitable. To be more specific, it was open to defendants long ago to press their alleged grounds for dismissing the class suit, while postponing entirely any attempt to settle the individual claim. If, as they insist, the purported class action could not lie, there was no good reason to muddy the waters by making the individual settlement contingent upon dismissal of the class suit.

Having confronted that unhappy package deal, the court owes a duty to see that there are not possible class members actually entitled to be heard and protected. There is no one here with both knowledge of the underlying facts and an undiluted interest in arguing for such protection. Whether any sufficient number—or anyone at all—in such a category actually exists cannot be known without the publication of some reasonable, if limited, inquiry in the form of notice.

What defendants perceive as a "specter" of unnecessary litigation—with plaintiff's more passionate counsel finding himself "shocked by so champertous a notice"—seems only a chimera rising in the heat of advocacy. The case is in substance close to the familiar kinds of suits where a settlement or other disposition possibly hurtful to third parties must be publicized sufficiently to confirm or disconfirm such a possibility. Notices of that sort cause trouble, defeat expectations, bring new litigants to court. But nobody supposes they are "champertous" or unnecessary. So much for the supposed ethical solecism the parties now perceive.

The existence of prior publicity is not a good or sufficient reason for acting now without notice. The effects of that publicity for present purposes are at best uncertain. It could have led potential class members, seeing the matter in

charge of well-known counsel, to refrain from taking on the job for themselves. However likely that is, the court cannot rest assured that the few stories in the press were enough to prompt full consideration by potential intervenors of what they might wish to do in circumstances that may well be on the verge of changing sharply from those the news stories portrayed.

It must be acknowledged, of course, that the sharp changes possibly in the offing may well include at the end a dismissal of the instant plaintiff's class suit. For reasons fairly evident by now, this plaintiff does not seem a suitable representative. If nobody else appears to take over that role, defendants are likely to find themselves where they assert they should now be—rid of any class claim. But that, for reasons given above at undue length, is not a result the court may fairly or advisedly order in the present posture of the case.

Finally, the court notes but rejects defendants' contention that plaintiff should in the first instance pay the cost of the notice. If the class suit ends, as defendants confidently predict it must, and if the $13,000 settlement recently verging on consummation should be revived, this small item of expense should be easily manageable. In any event, as has heretofore been stated, the expense of publishing the notice may become an item of costs at the end of the case.

The court concludes, then, that the notice in the Appendix hereto should be published by defendants and at their expense, first, on a weekday as promptly as possible after this date (but not later than August 5, 1971) in the New York Times, and, thereafter, on a weekday in the succeeding week, in The Wall Street Journal.[2]

It is so ordered.

---

**2.** It will follow, of course, that further proceedings must transpire in this case. Whether or not proposed intervenors present themselves before the deadline of September 13, 1971 (see Appendix, *infra*), the court will, with all possible speed

**502**

APPENDIX

NOTICE TO SHORT SELLERS OF COMMON STOCK OF GALE INDUSTRIES, INC., BETWEEN JULY 11, 1967, AND OCTOBER 9, 1968, AND TO ANY OTHERS CLAIMING MEMBERSHIP IN THE CLASS OF PLAINTIFFS HEREIN

This Notice, pursuant to order of this Court dated July 14, 1971, is to report on the pendency and background of certain motions seeking, among other things, to dismiss so much of the complaint as purports to allege representative claims on behalf of persons other than plaintiff.

This action was commenced on or about October 23, 1968, by the plaintiff for himself and allegedly "on behalf of all persons similarly situated who were 'short' or are 'short' of Gale stock or who have been damaged by defendants' acts." The complaint alleges, in substance, that defendants, in violation of the Securities Exchange Act of 1934, issued false and overly optimistic statements concerning Gale's operations and concealed certain material facts during the relevant period in order to manipulate upward the market price of Gale stock. The defendants upon whom personal jurisdiction has been obtained by service of the summons and complaint are Gale Industries, Inc., Wm. Gluckin, Ltd., Howard Gould, Gerald Gluckin, Edwin W. Gluckin, David Shinefeld and Quentin R. Krantz. These defendants have filed answers denying the allegations of the complaint and denying any allegations of wrongdoing. No other defendant has been served or has appeared in this action.

Plaintiff, in February of this year, moved to drop the class claim, informing the Court of the parties' intention to settle plaintiff's individual claim for $13,000. Upon the Court's requirement that notice of such intention be given, the proposed settlement aborted and plaintiff moved for an order that the action may be maintained as a class action. Defendants oppose this motion and seek a determination that the action is not maintainable on behalf of the alleged class. Questions are presented as to the adequacy of plaintiff's representation, the existence of a group sufficiently numerous to comprise a "class," and the comparative efficacy of a class action as against other available methods for the fair and efficient adjudication of the controversy.

It is a purpose of this Notice to afford an opportunity to interested parties to seek intervention in this action, to present arguments pertinent to the pending motions, and to seek, if they be so advised, substitution in plaintiff's stead as representative of the alleged class. Any person desiring to appear for any such purpose may file appropriate motions with the Clerk of this Court on or before September 13, 1971, marked for reference to the undersigned, with proof of service of copies upon Bennett Frankel, 270 Madison Avenue, New York, N.Y. 10016; Golenbock and Barell, 60 East 42nd Street, New York, N.Y. 10017; White & Case, 14 Wall Street, New York, N.Y. 10005; and Leaf, Kurzman & Deull, 22 East 40th Street, New York, New York.

For a more detailed statement of the matters involved in this action, reference is made to the pleadings, motion papers, affidavits, legal memoranda and other papers filed in this action, all of which may be inspected at the Office of the Clerk of the United States District Court for the Southern District of New York, Foley Square, New York, N.Y. 10007.

thereafter, render such additional rulings upon such additional hearings or other

submissions as may become necessary and appropriate.