**Marcus ROSS and Ruth Ross, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Leslie H. WARNER et al., Defendants.**

**No. 77 Civ. 243 (CHT).**

United States District Court,
S. D. New York.

Sept. 19, 1978.

Schoengold & Sporn, P.C., New York City, for plaintiffs; Kenneth A. Elan, Bayside, N. Y., of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Leslie H. Warner, Theodore F. Brophy and John J. Douglas; Michael D. Blechman, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Arthur Andersen & Co.; James D. Zirin, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

The plaintiffs in this as-yet-uncertified class action have moved to amend their complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rules"). In its present posture the complaint charges numerous violations of securities and common law in behalf of a class consisting of all persons who, from January 6, 1967 to January 17, 1977, purchased the stock of General Telephone & Electronics Corp. ("GT&E") either on the open market or through an automatic dividend reinvestment service for GT&E shareholders. First Amended Complaint ¶ 3. The proposed Second Amended Complaint contains two substantial changes, the first adding a cause of action and the second drastically contracting the proposed class. In addition, there are certain minor alterations which purport to reflect more accurately the shareholder position of the named plaintiffs. The latter changes appear to be of no moment to those who oppose the motion; dispute centers on the additional cause of action and especially on the narrowing of the class.

■ Defendant Arthur M. Andersen & Co. ("Andersen"), alleged by plaintiffs to be the regular accountant for defendant GT&E, opposes the motion to amend on alternate grounds. First, it argues that no newly discovered facts justify the amendment in view of purported prejudice to Andersen. In the fact of the strong and explicit Rule 15(a) policy that leave to amend "shall be freely given when justice so requires," *see Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), Andersen's claims of prejudice are weak. It contends that because plaintiffs have chosen to amend rather than to reply to Andersen's motions to dismiss that prejudice is "apparent." However, the indulgent cast of Rule 15(a) is not altered by the fact that amendment is requested in response to a motion to dismiss. *See 3 Moore's Federal Practice* ¶ 15.08[4] at 895–96 (2d ed. 1974). Furthermore, there has been very little discovery in this action and although it is over a year-and-a-half old it has, perhaps lamentably, not progressed to the point of prejudice exemplified in the cases cited by Andersen in support of its position. *E. g., Kirby v. P. R. Mallory & Co.*, 489 F.2d 904 (7th Cir. 1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974) (two-and-one-half year hiatus between institution of claim and request to amend; extensive pretrial discovery complete and motion to amend not filed until summary judgment motion set for oral argument); *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) (complaint dismissed; motion to amend followed). Indeed, Andersen has not demonstrated that it is prejudiced by this motion beyond the need to

respond to a different allegation of misconduct, although in regard to this newly proferred theory Andersen also states that the motion to amend should be denied because there is a limitations defense available. Affidavit of James D. Zirin, sworn to June 21, 1978, ¶ 16. That is a matter of substantive law which can be addressed in a motion to dismiss the newly amended complaint, and the allegation of a good defense to the pleading does not persuade the Court that the amendment is prejudicial.[1]

Alternatively, Andersen joins defendants Leslie H. Warner, Howard W. Douglas and Theodore F. Brophy in technical acquiescence to the motion to amend. However, all urge on the Court the view that the law demands notice of the change in class constituency to those current members of the class who would be dropped if the amendment were permitted. Invoking Rule 23(e) the defendants reason that exclusion from the class in these circumstances is tantamount to a "dismissal" as to the persons dropped, bringing that segment of the class within the protection of Rule 23(e). Plaintiffs dispute this theory and contend that no notice is necessary. For the following reasons the Court agrees in substance with the defendants, and the motion to amend the complaint pursuant to Rule 15(a) will be granted conditioned upon notice to the persons who will be excluded from the class as it stands in the First Amended Complaint. The form of notice will be discussed below.

 Rule 23(e) provides that a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."[2] The policies served by the Rule are those of "reducing class allegations added solely to enhance the settlement of the representative" and "informing those persons who have refrained from pursuing their own relief in reliance on the representation of the class representative." Muntz v. Ohio Screw Products, 61 F.R.D. 396, 398 (N.D. Ohio 1973); see Rothman v. Gould, 52 F.R.D. 494 (S.D.N.Y.1971); Yaffe v. Detroit Steel Corp., 50 F.R.D. 481 (N.D.Ill.1970); 7A C. Wright & A. Miller, Federal Practice & Procedure ¶ 1797 (1972); Developments in the Law—Class Actions, 89 Harv.L.Rev. 1318, 1540–41 (1976) ("Class Actions"). It is only the second of these policies which may be implicated in the circumstances at bar: there has been no suggestion, nor has the Court any reason to believe, that narrowing the class is a tactic to gain leverage for a settlement advantageous to the named plaintiffs.

There is a paucity of authority regarding the applicability of Rule 23(e) to the mere narrowing of a proposed class rather than to the dismissal or compromise of the action as a whole. However, at least one court has stated that it "would seem" that in such a case "Rule 23 and the due process clause would require notice to the entire original class and an opportunity to object and intervene in order to protect their rights." Turoff v. Union Oil Co., 61 F.R.D. 51, 56–57 (N.D.Ohio 1973). But see Wood v. Rex-Noreco, Inc., 61 F.R.D. 669, 672 (S.D.N.Y.1973) (proposed amended complaint which would narrow class permitted without notice because no class determination yet made). Those courts which have addressed Rule 23(e) within its literal terms, i. e., compro-

---

1. On the other hand, the plaintiffs must bear in mind that rejection of Andersen's claim of prejudice at this time is not an invitation to continue avoidance of the substantive issues in this case. Andersen has twice moved to dismiss and will likely do so again; we are certainly nearing the point which prompted another court to say: "While leave to amend should be freely given, the time must arrive at some stage of every litigation when plaintiff must be required to stand upon the allegations he is asserting; that time has arrived." Bernstein v. N. V. Nederlandsche-Amerikaansche Stoomv-

aart-Maatschappij, 79 F.Supp. 38, 42 (S.D.N.Y. 1948).

2. It is settled law that from the time of filing a class action, including the period before its certification, it is to be dealt with as such for purposes of dismissal or compromise. Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Philadelphia Elec. Co. v. Anaconda American Brass Co., 42 F.R.D. 324, 328 (E.D. Pa.1967).

mise or dismissal of the entire action, have adopted a flexible approach to notice, requiring it where the facts demonstrate an attempt to subvert the prophylactic function of the Rule and avoiding it where no such taint appears. *Compare Yaffe v. Detroit Steel Corp., supra* (amendment to delete class action vacated where plaintiffs had subsequently settled individually with defendants and no notice was given to class), and *Rothman v. Gould, supra* (settlement with named plaintiff disapproved until notice given; responsibilities of commencing class action not discharged until "some decent notice" given other class members so they might protect their interests), *with Bantolina v. Aloha Motors, Inc.,* 75 F.R.D. 26 (D.Hawaii 1977) (economically pressed plaintiffs wishing to discontinue class action and proceed individually not required to give notice where no settlement in the offing and no limitations problems prejudicing abandoned class), and *Berse v. Berman,* 60 F.R.D. 414 (S.D.N.Y.1973) (same). This flexible, equitable approach has been endorsed by certain commentators, *see generally Class Actions, supra,* 89 Harv. L.Rev. at 1540–46, and in view of the policies served by notice seems both wise and instructive for the facts at bar.

Plaintiffs' initial complaint, filed January 17, 1977, purported to represent a class consisting of "all persons who were members of the Systematic Investment Service for GT&E common stock from January 1973 to January 17, 1977." Complaint ¶ 4B. Their First Amended Complaint, filed October 20, 1977, expanded the class to "all persons who purchased stock of GT&E, either on the open market or through the Shareholder Systematic Plan, from January 6, 1967 to January 17, 1977." First Amended Complaint ¶ 4(B). No justification was given or required for the expansion of the class, since that amendment was made as a matter of course before a responsive pleading was served. Rule 15(a). The proposed amendment reduces the group again to "all persons who purchased common stock of GT&E through the Automatic Dividend Reinvestment Service from January 1, 1972 through August of 1975 through the [Shareholder Systematic Investment] Service; and from August of 1975 to January 17, 1977 through the [Shareholder Systematic Investment] Plan." Proposed Amended Complaint ¶¶ 3–4. This would represent the elimination of some 90% of the current class, or approximately 875,000 persons, Defendants' Memorandum at 5, and appears to restore the size of the class to substantially what it was at the commencement of the action. Whatever the reasons for the temporary inflation, the fact remains that those added persons fell under the umbrella of the proposed class as of the filing of the First Amended Complaint on October 20, 1977. From that date the statute of limitations was tolled as to any claims these persons might have arising from the transactions complained of at bar, *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); however, the limitations period will begin to run again as to those claims when the group is excluded by the Second Amended Complaint. Although there has been no formal notice of this action, it has been pending in its expanded form for nearly a year. The gravamen of the action questions whether GT&E's stock prospectuses, proxy material and other shareholder reports and solicitations "fairly and honestly describe[d] the improper transactions and business practices of GT&E and the improper and wrongful commercial bribes and political contributions" allegedly made in this country and abroad. Second Amended Complaint ¶ 4(D). Such serious and newsworthy allegations made against a huge corporation force the Court to consider the probability that many of the soon-to-be-abandoned class members received actual notice of the institution of this suit through national publicity and were perhaps deterred from instituting their own suits in reliance on their class membership. *See Rothman v. Gould, supra,* 52 F.R.D. at 496. Equity dictates that these possible litigants not forfeit their rights for lack of knowledge that they are once again on their own.

It is the Court's conclusion that some form of notice must be given to the aban-

doned class whether or not the proposed diminution in class size falls strictly within the ambit of Rule 23(e). It is unnecessary to decide that question, for in the exercise of its supervisory obligations under Rule 23 as a whole the court may "make appropriate orders . . . requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action." Rule 23(d)(2). The class currently consists of nearly one million members: the protection of their rights is the responsibility of this Court.

The form of notice is left to the court's discretion by both Rules 23(d)(2) and 23(e) ("in such manner as the court [may direct] directs."). Individual notice is neither required nor warranted under the circumstances, although plaintiffs have assumed the worst and argued at length against the expenditure involved in noticing each abandoned class member individually. The Court agrees that to require plaintiffs to employ individual notice in these circumstances would unnecessarily put them between a rock and a hard place: having determined, possibly for reasons of economy, that a class of some 90,000 would be more "manageable" than one of nearly a million, plaintiffs would in the end have spent as much for notice requirements to represent a tenth of the group as to represent the whole, for, assuming certification, beyond Rule 23(d)(2) or 23(e) notice, they would still be responsible for Rule 23(c)(2) notice to the remaining class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Moreover, if they were successful on the merits, the cost of noticing the full million persons might stand as a charge against the presumably more limited recovery obtained in the much narrower suit. *Sprague v. Ticonic Bank*, 307 U.S. 161, 164–67, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Cole v. Schenley Industries, Inc.*, 60 F.R.D. 81, 86–87 (S.D.N.Y.

1973). No such draconian measure is necessary; indeed, it is rejected *sub silentio* in *Eisen, supra*. There, after declaring that the plaintiff would be responsible in the first instance for the cost of individual notice to the enormous class, the Court stated:

> The record does not reveal whether a smaller class of odd-lot traders could be defined, and if so, whether petitioner would be willing to pay the cost of notice to members of such a class. We intimate no view on whether any such subclass would satisfy the requirements of Rule 23. We do note, however, that our dismissal of the class action as originally defined is without prejudice to any efforts petitioner may make to redefine his class either under Rule 23(c)(4) or Fed. Rule Civ.Proc. 15.

*Id.* 417 U.S. at 179 n. 16, 94 S.Ct. at 2153. It would have been senseless for the Court to suggest a smaller class to the economically pressed plaintiff if at the same time it contemplated that individual notice would be required to all those jettisoned from the original class.[3] Of course, no more than did the *Eisen* Court does this Court now decide the propriety of certifying the newly narrowed class.

It is therefore the order of this Court that within 30 days from today plaintiffs submit a proposed form of notice for one-time publication in *The Wall Street Journal*, the *New York Law Journal* and in the financial pages of suitable newspapers of general circulation in five major metropolises across the continental United States, the particular publications to be suggested by plaintiffs. Such notice will be not less than one-half column in length, will be directed at those current members of the class who will no longer be represented upon amendment of the complaint, and will contain in brief a statement of the gravamen of the action and a notification that those addressed will henceforth be required to pursue their rights, if any, individually. Upon approval by this Court of the form of notice

---

**3.** This theory also disposes of defendants' complaint that plaintiffs' amendment is suspect because it is "an effort to create an arbitrary new class based upon what they are apparently willing to pay for the costs of notice." Defendants' Memorandum at 1.

and the place of publication and upon suitable proof that publication has been accomplished, the Court will grant the plaintiffs' motion to amend.

So ordered.