**Bernard GOLDSTEIN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**DELGRATIA MINING CORPORATION, et al., Defendants.**

**No. 97 CIV. 4459(DNE).**

United States District Court, S.D. New York.

Nov. 14, 1997.

Mark C. Gardy, Abbey, Gardy & Squitieri, L.L.P., New York City, for Plaintiff.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*Background*

This class action suit brought by Plaintiff, Bernard Goldstein, on behalf of himself and all others similarly situated is one of eight class action lawsuits filed in three different federal districts against Defendant, Delgratia Mining Corporation ("Delgratia"). Plaintiffs in these cases purportedly are Delgratia investors who are suing Delgratia in connection with its disclosures relating to gold mining activities in Nevada. Plaintiff initiated

this action on June 17, 1997. The gravamen of his Complaint is that Delgratia mislead investors by making materially false statements regarding certain test results on samples from mines operated by Delgratia in Nevada. Complaint at 21–33, 33–37. Plaintiff asserts that he and other members of the class relied, to their detriment, on this misleading information, and purchased Delgratia securities at a hyped high price. *Id.* at 37–38. As a result, Plaintiff claims that he and other members of the class suffered damages. *Id.* at 34, 37–38.

Arguing that the focal point of this multidistrict class action litigation was Nevada, Delgratia, on August 29, 1997, filed before the Judicial Panel on Multidistrict Litigation ("JPML"), a Motion for Transfer to the District of Nevada for Coordination or Consolidation pursuant to 28 U.S.C. § 1407. (Motion of Defendant Delgratia Mining Corporation for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 ("Motion for Transfer") (Aug. 29, 1997).) Delgratia, presumably waiting for the JPML hearing and decision on its Motion for Transfer, did not file an answer to Plaintiff's complaint nor did it make a motion for summary judgment.

On September 30, 1997, Plaintiff attempted to voluntarily dismiss this action by filing a Notice of Voluntary Dismissal with this Court. (Notice of Voluntary Dismissal Without Prejudice Pursuant to Rule 41(a)(1)(i) ("Notice of Voluntary Dismissal") (Sept. 30, 1997).) Plaintiff's Notice of Voluntary Dismissal stated that pursuant to Rule 41(a)(1)(i), he was dismissing without prejudice all causes of action in his complaint and that he was entitled to do so because no defendant had served an answer to his com-

plaint nor made a motion for summary judgment. (Notice of Voluntary Dismissal at 1.) In addition, his Notice of Voluntary Dismissal declared that "[n]o additional notice or approval is required for this voluntary dismissal without prejudice, pursuant to Rule 23(e)." *Id.* at 1–2.

In response to Plaintiff's action, Delgratia filed papers opposing Plaintiff's Notice of Voluntary Dismissal on October 8, 1997. (Opposition of Delgratia Mining Corporation to Plaintiff's Voluntary Dismissal Without Prejudice Pursuant to Rule 41(a)(1)(i) ("Opposition to Plaintiff's Voluntary Dismissal") (Oct. 8, 1997).) Delgratia argued that Plaintiff's Notice of Voluntary Dismissal "should not be given effect because it is an improper attempt by Plaintiff to do an end run around the [JPML][1] and because it fail[ed] to comply with the dictates of Rule 23(e), which requires court approval of class action dismissals." (Opposition to Plaintiff's Voluntary Dismissal at 1–2.)

In support of its claim that Plaintiff's Notice of Voluntary Dismissal is an improper effort by Plaintiff to divest the JPML of its power to decide the proper forum for this multidistrict litigation, Delgratia states that Plaintiff in this case and the five Nevada cases each filed a notice of voluntary dismissal as a direct response to Delgratia's Motion for Transfer to Nevada. *Id.* at 2. The sole purpose for these dismissals, Delgratia asserts, was to enable one of the Seattle plaintiffs, Scott Edwards ("Edwards"), to argue to the JPML, in his opposition papers to Delgratia's Motion for Transfer, that it did not have jurisdiction because the action was no longer a multidistrict litigation.[2]

---

1. On September 4, 1997, this Court was informed that the JPML received a motion to transfer in this case. (Letter from John F. Nangle to Honorable David N. Edelstein of September 2, 1997.) Subsequently, on October 10, 1997 the JPML notified this Court that they had scheduled a hearing on the motion to transfer for November 21, 1997. (Letter from Patricia D. Howard to Honorable David N. Edelstein of October 8, 1997 at 1.)

2. Indeed, Edwards' makes just that argument. *See* Response of Plaintiff Scott Edwards in Opposition to Defendants' Motion for Transfer and

Coordination or Consolidation Sept. 22, 1997. Edwards states that the motion before the JPML is moot because the four pending actions in Nevada have been voluntarily dismissed and the New York action was in the process of being voluntarily dismissed. *Id.* at 2–3. Further, in later papers submitted to the JPML, Edwards represented that the instant action was now voluntarily dismissed. (Supplemental Response of Plaintiff Scott Edwards in Opposition to Defendants' Motion for Transfer and Coordination or Consolidation, (Oct. 2, 1997) at 3.)

Delgratia thus contends that Plaintiff's attempt at a voluntary dismissal is part of an overall class scheme by the entire class of plaintiffs in an attempt to avoid litigating this case in Nevada. It argues that Plaintiff's blatant attempt at forum shopping should not be sanctioned by this Court. (Opposition to Plaintiff's Voluntary Dismissal at 3.) It further requests that this Court defer to the JPML for a determination of the appropriate forum for the Delgratia class actions. *Id.* at 4.

On October 17, 1997, Plaintiff submitted reply papers in support of his Notice of Voluntary Dismissal. (Plaintiff's Reply in Support of Plaintiff's Voluntary Dismissal of Action ("Plaintiff's Reply") (Oct. 17, 1997).) Plaintiff acknowledges that this Court must approve his voluntary dismissal as this is a class action suit. He maintains though that this Court should dismiss his case because his voluntary dismissal is not inconsistent with the purposes of Rule 23(e) which are to discourage the use of dismissals to secure unjust private settlements or prejudice absent class members. (Plaintiff's Reply at 2, 4.)

Further, Plaintiff contends that he attempted to obtain a voluntary dismissal only because the Seattle and Nevada Actions involve the same parties, issues and claims as his action and thus his claims will be litigated in either the Seattle or Nevada action. *Id.* at 2. He denies Defendant's allegations of ulterior motives. *Id.* He states that this Court should approve his voluntary dismissal because his claims will continue to be prosecuted against defendants and the dismissal will not prejudice the parties or the Class members. *Id.* at 2, 4.

Finally, Defendant filed a response to Plaintiff's Reply papers. (Response of Delgratia Mining Corporation to Plaintiff's Reply in Support of Plaintiff's Voluntary Dismissal of Action ("Delgratia's Reply") Nov. 3, 1997.) Delgratia reasserts that Plaintiff is only trying to secure a dismissal because it is "an important component to the Plaintiffs' collective efforts to avoid transfer to the District of Nevada." (Delgratia's Reply at 2.) In addition, Delgratia argues that there is the potential for prejudice to plaintiffs if the instant case is dismissed and the litigation is forced to proceed in the District of Washington. *Id.* at 3. The prejudice that plaintiffs will suffer, Delgratia asserts, is additional litigation costs and inconvenience. *Id.* Delgratia thus requests that this Court find that Plaintiff's Notice of Voluntary Dismissal has no force because of its failure to comply with Rule 23(e) and that this Court stay its ruling on Plaintiff's request for Voluntary Dismissal pending the JPML ruling.

### Discussion

■ Before addressing the merits of the parties claims, a most important issue must be discussed. That topic is Plaintiff's multiple misrepresentations to this Court. In Plaintiff's Reply papers, Plaintiff asserts that his "claims and those of the class will be litigated either in the Seattle or Nevada Action." (Plaintiff's Reply at 2.) This is simply not true. At the time Plaintiff filed with this Court his brief in support of his Voluntary Dismissal on October 17, 1997, he knew that Edwards had previously filed with the JPML two sets of papers in response to Defendants Motion for Transfer. He further knew that the basis for Edwards' argument to the JPML was that Defendants' motion to transfer proceedings to Nevada was moot as no related action was pending in any other district.

To reiterate, Edwards' papers stated that all five of the lawsuits filed in the District of Nevada had been voluntarily dismissed without prejudice. (Supplemental Response of Plaintiff Scott Edwards in Opposition to Defendants' Motion for Transfer and Coordination or Consolidation, (Oct. 2, 1997) at 3.) They further declared that

since there are no related U.S. actions pending anywhere but the Western District of Washington, the defendants' motion is completely without basis, as, on its face, the relevant authority for the transfer and consolidation defendants seek, 28 U.S.C. § 1407, is only applicable when related actions are pending in different districts: 'When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordi-

nated or consolidated pretrial proceedings.' As such, defendants' motion is moot, as this panel lacks jurisdiction or authority to grant the relief defendants request.

*Id.* at 3–4.

Nevertheless, Plaintiff in the instant case, with all of this knowledge, and in particular, knowing that all of the Nevada actions had all been dismissed, still represented to this Court that he was filing a voluntary dismissal only because his claims would be litigated in the Seattle or *the Nevada Action.* (Plaintiff's Reply at 2, 6.) As the Plaintiff well knows, if this Court dismisses his action, the JPML will be divested of authority and the case could only proceed in the District of Washington. In fact, the only way Plaintiff's claims could be litigated in Nevada would be if this Court did not dismiss this action and the JPML decided that the District of Nevada was the appropriate forum. Since Plaintiff had knowledge of these facts before he filed his papers with this Court, it can only be perceived that his claim that his action could proceed in Nevada was a knowing and purposeful misrepresentation.

 Plaintiff's other misrepresentation to this Court occurred in his Notice of Voluntary Dismissal which states that "[n]o additional notice or approval is required for this voluntary dismissal without prejudice, pursuant to Rule 23(e) of the Federal Rule of Civil Procedure." Notice of Voluntary Dismissal at 1–2. However, nothing could be further from the truth.

Rule 41(a)(1) provides in relevant part: *"[s]ubject to the provisions of Rule 23(e)* ... an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service of by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." Fed.R.Civ.P. 41(a)(1) (emphasis added). As stated in the rule itself, Rule 41(a)(1) is expressly subject to Rule 23(e). Rule 23(e) states that *"a class action shall not be dismissed without approval of the court,* and

notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." Fed.R.Civ.P. 23(e) (emphasis added).

These rules are clear and concise. A simple review of these rules informs the reader that a class action suit may not be dismissed without approval of the court. However, if some uncertainty had existed after a reading of the rules, the slightest amount of research would have revealed that the Southern District of New York, as most other districts, and all other leading authorities are of the view that court approval for dismissal of class action lawsuits is mandatory.[3] *See e.g. Alton Rainbow Corporation v. American Society of Composers,* 98 F.R.D. 299, 300 (S.D.N.Y. 1983); *Ross v. Warner,* 80 F.R.D. 88, 90 (S.D.N.Y.1978); *Gaddis v. Wyman,* 304 F.Supp. 713, 715 (S.D.N.Y.1969); *Gassie v. SMH, Ltd. & SMH,* 1997 WL 466905 * 2 (E.D.La. Aug.1 1997); *Kutner v. Sprint Communications Co.,* 1997 WL 471502 (W.D.Tenn. Mar.20, 1997); *In re Phillips Petroleum Securities Litigation,* 109 F.R.D. 602, 607 (D.Del.1986); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 1797 (1986); 5 *Moore's Federal Practice,* § 23.80 (Matthew Bender 3d ed.1997); *Moore's Federal Practice, Manual for Complex Litigation,* § 30.212 (Matthew Bender 3d ed.1997). Thus, as the rules indicate, "Rule 23(e) ... plainly takes away a class action plaintiff's right under Rule 41(a)(1) to voluntary dismissal merely by filing with the court a notice of dismissal." *In re Phillips Petroleum Securities Litigation,* 109 F.R.D. at 606–07.

This Court is of the opinion that either this was a blatant attempt by Plaintiff to mislead this Court, or Plaintiff was completely negligent in his research if he conducted any at all. Whatever the reason, this Court reminds the Plaintiff that such inexcusable conduct is sanctionable under Rule 11 and will not be tolerated by this Court.

---

3. This is true even in the context of pre-certification. *Ross v. Warner,* 80 F.R.D. 88, 90 (S.D.N.Y. 1978); *Washington v. Wyman,* 54 F.R.D. 266, 271 (S.D.N.Y.1971); *Gaddis v. Wyman,* 304 F.Supp. 713, 715 (S.D.N.Y.1969). *See Larkin* *General Hospital v. American Telephone & Telegraph Co.,* 93 F.R.D. 497 (E.D.Pa.1982); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 42 F.R.D. 324 (E.D.Pa.1967).

Moreover, Plaintiff's conduct has tainted this proceeding. Thus, this Court must deny Plaintiff's motion. Delgratia asserts that plaintiffs, as a class, will be prejudiced if this case is dismissed. The thrust of Delgratia's argument is that plaintiffs will suffer additional litigation costs and inconvenience if the litigation proceeds in the District of Washington as opposed to the District of Nevada. Although Plaintiff has stated that the class will not be prejudiced in such a manner, this Court is not convinced. Rule 23(e) prohibits dismissal of a class action if the result would be to injure the other members of a purported class. *Washington v. Wyman,* 54 F.R.D. 266, 270 (S.D.N.Y.1971); *accord Gaddis,* 304 F.Supp. at 715. This Court is not persuaded that the absent class members will not be prejudiced even if their claims will be litigated in the District of Washington. The fact that Plaintiff's have declared that the absent class members will not be prejudiced by this voluntary dismissal does not put this Court at ease considering Plaintiff's affinity for misrepresentations.

■ As Plaintiff's hands are so sully with untruths, misrepresentations and brazen failure to deal with the facts, he represents a striking example of a plaintiff caught with unclean hands. The doctrine of unclean hands allows a court to deny relief in an action in which a party has been guilty of unconscionable conduct in relation to the matter that he seeks. *Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.,* 792 F.Supp. 969 (S.D.N.Y.) (citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245–46, 54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933)), *aff'd* 983 F.2d 1048 (2d Cir.1992); *Western Union Telegraph Co. v. MCI Communications Corp.,* 1986 WL 2769 *2 (S.D.N.Y. 1986).[4] In applying the doctrine of unclean hands, this Court is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Western Union Telegraph Co.,* 1986 WL 2769 *2 (Quoting *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245–46,

54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933)). This Court has the authority to use this doctrine to protect the integrity of this Court, and chooses to do so.

In light of Plaintiff's farrago of misrepresentations and blatant bare faced violence to the facts, this Court finds it imprudent to deal with Plaintiff's motion on its merits because the merits, if any, have been so totally obscured to mislead this Court. Accordingly, Plaintiff's motion for voluntary dismissal is hereby denied. Additionally, this Court will stay any further proceedings pending the JPML's decision on the appropriate forum for this case.

SO ORDERED.

---

4. Indeed, "[t]he doctrine is derived from the unwillingness of a court, originally and still nominally one of conscience, to give its peculiar relief to a suitor who in the very controversy has so conducted himself to shock the moral sensibili-

ties of the judge. It has nothing to do with the rights or liabilities of the parties ... and the court may even raise it sua sponte." *Art Metal Works v. Abraham & Straus, Inc.,* 70 F.2d 641, 646 (2d Cir.1934) (Hand, J., dissenting).