Richard T. MAGANA, Individually and on behalf of all others similarly situated, Plaintiff,

v.

PLATZER SHIPYARD, INC., Defendant.

Civ. A. No. 75–H–1890.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 7, 1977.

Henry M. Rosenblum, Houston, Tex., for plaintiff.

E. Frank Killough, Franklin, Kelly, Graham & Killough, Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

Counsel's proposed settlement of this Title VII action, 42 U.S.C.A. § 2000e, *et seq.* (1974), poses two issues for the Court's resolution: If a class action is alleged by plaintiff but not as yet certified by the Court, and the proposed settlement is solely on behalf of the named plaintiff with no provision whatsoever for the putative class members, (1) is notice of the proposed compromise to potential class members necessary at this time; and (2) is the Court obligated under the law to review the reasonableness of the attorney's fee to be collected by plaintiff's counsel, even if the fee is based upon a contingent fee agreement between counsel and the named plaintiff?

This Court recently has addressed and recognized the Court's obligation to review the reasonableness of an attorney's fee to be awarded plaintiff's counsel as part of a Title VII class-wide settlement and has delineated the procedures to be followed by counsel to ensure appropriate disclosure and review of the proposed fee. *See Foster v. Boise-Cascade, Inc.,* 420 F.Supp. 674 (S.D. Tex.1976) (hereinafter *"Foster"*). However, this Court's recent experience has been that the clear majority of proposed Title VII settlements in actions containing Rule 23 class allegations occur prior to actu-

al class certification and make provision only for the named plaintiff. The possibility for abuse of the Rule 23 device inherent in such a predictable pattern necessitates that the Court expressly define the contours of its notice and attorney's fees responsibilities under Fed.R.Civ.P. 23 in the special context of public-oriented Title VII litigation. In so doing, the Court can promulgate and implement settlement procedures which accord with the dictates of the law.[1]

In order to develop effective settlement procedures, two potentially conflicting policies must be harmonized. On the one hand, unlike the settlement of a purely private action where settlement is freely allowed, the Court cannot mechanically enter the parties' requested dismissal in cases such as these once a compromise is reached. Instead, because of the public interest in class litigation created by the allegation of classwide injury, and the concern that the public interest has not been sacrificed for private gain during settlement negotiations, the Court must fulfill the review and approval duties imposed by Rule 23(e) before authorizing the entry of a joint stipulation of dismissal. *See* Rule 41(a)(1). As a result, the proper settlement of an actual or alleged class action can be a somewhat time-consuming procedure to both the parties and the Court.

On the other hand, the temptation to gloss over the requirements of Rule 23(e) also stems from a court's interest in encouraging settlements. As recognized by the Ninth Circuit Court of Appeals in the special context of class actions,

"[t]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."[2]

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). *See Manual for Complex Litigation,* 1 J. Moore, Federal Practice, Part 2, § 1.21 (2d ed. 1975). Thus,

"[t]he challenge is to create procedures that will foster settlements which adequately protect absentees' interests, or at least serve to identify unfair outcomes when they are presented to the court."

*Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1539 (1976) (hereinafter "Harvard study").[3] *See also* Dole, *The Settlement of Class Actions for Damages,* 71 Colum.L.Rev. 971 (1971) (hereinafter "Dole, *Class Action Settlements* ").

## II. FACTUAL BACKGROUND

Plaintiff filed suit on November 4, 1975, pursuant to 28 U.S.C. § 1343(4) (1974), on behalf of a class composed of all "Black and Spanish surnamed American persons" who have been, are, or may in the future be employed by defendant at its facilities located in the State of Texas, alleging discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* (1974). Following the joinder of issue, this Court on January 14, 1976, entered an Order setting deadlines for discovery and briefing on the issue of class certification, including the taking of plain-

1. This Court, in *Held v. Missouri Pacific Railroad Co.,* 64 F.R.D. 346 (S.D.Tex.1974), expressed concern over the proper procedures to be followed by the Court in acting as the "guardian" for absent class members when an individual settlement of an asserted class action is submitted for approval. However, the Court thereafter determined that the plaintiff in *Held* was not an adequate class representative, as required by Fed.R.Civ.P. 23(a)(4), because she had displayed a personal antagonism towards members of the alleged class. The Court therefore dismissed the class allegation, 64 F.R.D. at 349–51, and did not reach the issues presently before the Court.

2. In fact, most class actions for damages are settled or dismissed before trial. *See Developments in the Law—Class Actions,* 89 Harv.L. Rev. 1318, 1373 n. 5 (1976).

3. The Court has placed special reliance on this exhaustive study of Rule 23 recently published by the Harvard Law Review, especially Parts VI. ("Supervising Settlements") and VII.C. ("Litigation Costs in Class Actions: Attorneys' Fees and Other Expenses"). Much of what is stated therein concisely expresses the views of this Court on this troublesome area of the law.

tiff's deposition by defendant and the submission by plaintiff of class-related interrogatories to the defendant. According to the calendar established by the Court, all discovery and briefing on the class question was to be completed by May 3, 1976.

On February 20, 1976, plaintiff submitted a list of thirty-seven (37) interrogatories to defendant aimed primarily at gathering statistics on the racial composition of the defendant company, together with information on the defendant's organizational structure. However, no answers to the interrogatories were filed subsequent thereto, nor did counsel for plaintiff invoke the appropriate sanctions to compel such answers. Moreover, according to the official court record for this cause, plaintiff's deposition was not taken by defendant as directed by the Court. Thus, no significant effort was made by either counsel to ascertain whether or not the facts, if discovered, supported the existence of an employee class as alleged in the complaint.

Rather, on May 6, 1976, counsel jointly submitted to the Court for approval a settlement agreement providing for the payment to plaintiff of $3,000.00 in satisfaction of his individual claim and making no provision for alleged class members. A Stipulation of Dismissal submitted with the settlement agreement in accordance with Fed.R. Civ.P. 41(a)(1) states, *inter alia*:

"Plaintiff has purported to bring this suit as a class action; however, the Court has made no ruling as contemplated by Rule 23(c)(1) of the Federal Rules of Civil Procedure as to whether or not the Plaintiff may properly maintain his suit as a class action. Plaintiff hereby withdraws his claim to represent in this action any persons other than himself."

Also, at the instruction of the Court, counsel for plaintiff submitted an affidavit stating that his attorney's fee would be $1,200.00, based upon a forty percent (40%) contingent fee arrangement for any settlement obtained prior to trial. This had been agreed to by plaintiff on March 11, 1976, four months after the filing of the action and three weeks after the submission to

defendant of plaintiff's interrogatories. The affidavit also attested to the hours expended by plaintiff's counsel on the case: referring attorney = six (6) hours; counsel = four (4) hours; counsel's associate attorney = two (2) hours; and counsel's law clerk = six (6) hours.

This Court, cognizant that a stipulation of dismissal pursuant to Rule 41(a)(1) is expressly subject to Rule 23(e) which governs the dismissal or compromise of a class action, and being uncertain both as to the applicability of Rule 23(e) to the instant settlement and the Court's role, if any, in approving the attorney's fee to be recovered by plaintiff's counsel, directed counsel for plaintiff to submit a legal memorandum discussing the above-delineated inquiries. A lengthy memorandum thereafter was submitted on August 5, 1976, together with counsel's statement that one-hundred (100) hours had been spent on the research and preparation of the brief, broken down as follows: counsel = five (5) hours; counsel's associate attorney = fifteen (15) hours; and counsel's law clerk = eighty (80) hours. No other briefs have been submitted on the legal questions posed by the common settlement proposal described herein.

## III. APPLICABILITY OF RULE 23(e) TO A PRE–CERTIFICATION SETTLEMENT OF THE NAMED PLAINTIFF'S CLAIM AND DISMISSAL OF THE CLASS CLAIM

Rule 23(e) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

The Harvard Law Review study, *supra,* at page 1540 concisely summarizes the inherent danger which accompanies the negotiation, prior to class determination, of a settlement on behalf of the individual plaintiff only:

"In the pre-certification context, the settlement problem will often arise in the form of a motion to dismiss class allega-

tions or to dismiss the action altogether. Either of these motions may follow a legitimate decision that a claim is atypical or meritless, but they may also be the culmination of a process in which the representative plaintiff increases his bargaining leverage by filing a class suit and then attempts to abandon the class when his personal objectives have been met. Such a use of the class action may properly be called an abuse because none of the policies underlying the creation of the device are advanced." (footnotes deleted)

*Cf. Foster, supra* at 679–682, 685–89. Recognizing that plaintiff's counsel will in fact serve as the negotiator on behalf of the named plaintiff and the asserted class, this Court further has noted that

"the spectre persists, absent appropriate judicial inquiry, that plaintiff's attorney may accept an insufficient judgment for the class in trade for immediate and certain compensation for himself in the form of legal fees deducted from the total available funds proffered by defendant."

*Foster, supra* at 686. Thus,

"the danger will exist that a plaintiff and his attorney will deliberately shift the burden of a compromise to parties not before the court. In its crudest form, this sort of compromise involves a sell-out by the named plaintiff and the class attorney, in which they agree to discontinue the class suit in return for personal reward."

Harvard study, *supra* at 1537.

The purpose of Rule 23(e) is to protect the class action device from being used in any such abusive manner. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1797, at 226 & n. 27 (1972) (hereinafter "Wright"). Thus, adopting the principle that "no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants," *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 42 F.R.D. 324, 328 (E.D.Pa.1967), courts have recognized almost unanimously that the allegation of a class in the complaint invokes the judicial

duties imposed by Rule 23(e) until such time as the Court determines that a class action is not proper. *See, e. g., Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3rd Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) (settlement and dismissal); *Duncan v. Goodyear Tire & Rubber Co.,* 66 F.R.D. 615 (E.D.Wis.1975) (settlement and dismissal); *Rotzenburg v. Neenah Joint School Dist.,* 64 F.R.D. 181, 182 (E.D.Wis. 1974) (settlement and dismissal); *Held v. Missouri Pacific Railroad Co.,* 64 F.R.D. 346 (S.D.Tex.1974) (settlement and dismissal); *Rothman v. Gould,* 52 F.R.D. 494, 496 (S.D.N.Y.1971) (settlement and dismissal); *Yaffe v. Detroit Steel Corp.,* 50 F.R.D. 481 (N.D. Ill.1970) (settlement and dismissal); *Philadelphia Electric Co. v. Anaconda American Brass Co., supra* (settlement and dismissal); *cf. Brookhaven Housing Coalition v. Sampson,* 65 F.R.D. 24 (E.D.N.Y.1974) (dismissal of plaintiff's claim for lack of standing); *Gaddis v. Wyman,* 304 F.Supp. 713, 715 (S.D.N.Y.1969) (dismissal of plaintiff's claim for mootness). *But cf., Booth v. Prince George's County, Maryland,* 66 F.R.D. 466 (D.Md.1975) [4 Class Action Reports ("C.A. R.") 473] (dismissal for lack of standing).

Counsel for plaintiff argues that this presumption of Rule 23(e) application during the pre-certification stage has been undercut by the Supreme Court's recent pronouncement that

"[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant."

*Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975).

"The certification of a suit as a class action has important consequences for the unnamed members of the class. If the suit proceeds to judgment on the merits, it is contemplated that the decision will bind all persons who have been found at the time of certification to be members of the class. Rule 23(c)(3); Advisory Committee Note, 28 U.S.C. App., pp. 7765–7766, 39 F.R.D. 69, 105–106. Once the suit is certified as a class action,

it may not be settled or dismissed without the approval of the court. Rule 23(e)."

*Id.* n. 8.

This Court cannot accept the negative implication urged by counsel that, in view of the above-quoted language, Rule 23(e) and its requirement of notice should not be presumed to apply prior to class certification. The Supreme Court did not have before it the factual circumstances and potential for abuse posed by the instant settlement proposal. Rather, the Supreme Court's discussion pertained to the question of mootness and whether a certified class action survives the resolution of the named plaintiff's claim. Thus, in view of the unrelated nature of the question before the Supreme Court to the issues at hand, this Court is unwilling to attribute any special significance to the above-quoted language. As stated by Judge Gordon for the Eastern District of Wisconsin in confronting the identical contention:

> "[I]n my opinion, the Supreme Court's observation that notice is required after certification intimates no view on the more difficult question presented by this case: is notice of a compromise also required *before* a class action certification?"

*Duncan v. Goodyear Tire and Rubber Co.,* supra at 616. Moreover, adoption of counsel's technical argument would contradict the analysis by the Advisory Committee on the 1966 amendments to Rule 23 that

> "[a] negative determination [that the alleged class is not maintainable] means that the action *should be stripped of its character as a class action.*"

Advisory Committee's Notes of the 1966 Amendments to Rule 23, 39 F.R.D. 98, 104 (1966) (emphasis supplied).

■ Accordingly, because the abuses which Rule 23(e) is designed to combat can occur prior to class certification, this Court holds that Rule 23(e) approval must be obtained for the proposed settlement of a named plaintiff's claim when the plaintiff has purported to represent a class that he now seeks to dismiss.

## IV. SCOPE OF THE COURT'S RULE 23(e) OBLIGATIONS

Having concluded that Rule 23(e) is applicable to this proposed settlement and dismissal, it is necessary to determine the contours of the Court's duties, especially with regard to notice to the potential class and approval of class counsel's attorney's fee.

### A. Mandatory Nature of and Purposes Behind Rule 23(e) Approval

■ The Rule 23(e) requirement that a class action "should not be dismissed or compromised without the approval of the court" has been interpreted as mandatory. *See* 3B J. Moore, Federal Practice ¶ 23.-80[2.–1] (2d ed. 1975); Harvard study, *supra* at 1542 n. 32. Before approving the compromise, the Court must in every instance determine that the proposal is fair, reasonable and in the best interests of all who will be affected by it. *See, e. g., Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975); *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971); *Foster, supra* at 679–80. As this Court recently has analyzed in detail, *see Foster, supra* at 679–82, the Rule 23(e) determination, and the requirement that it be made, entails the furtherance of two basic aims: (1) *protection* of the interests of putative class members by the Court; and (2) *prevention* of Rule 23 abuse characterized by collusion between the private parties to the settlement, including counsel. *See* Wright, *supra* at 230.

In proceeding to approve the individual settlement of an *asserted* class action for which no Rule 23(c)(1) class determination has been made, the Court feels compelled to place greater emphasis on the "prevention of abuse" aim delineated above. As pointed out in Parts III., *supra,* and IV.C.1., *infra,* the possibility of "legalized blackmail," *see* Simon, *Class Actions—Useful Tool or Engine of Destruction,* 55 F.R.D. 375 (1972), and Rule 23 abuse is at its height during the pre-certification stage when defendant is literally threatened by potential classwide liability. Because the existence of a class has not been determined, the likelihood increases that plaintiff and his counsel

will unduly sacrifice the previously-asserted class interest for private gain.

At the same time, it is axiomatic that potential class members have a more speculative interest in the litigation than certified class members and that their expectations therefore should be accorded less weight. Thus, the "protection of class" function embodied in Rule 23(e), although important, is not paramount in the pre-certification stage, as it is once a class actually is defined. Instead, in analyzing the fairness and reasonableness of the proposal pursuant to Rule 23(e), this Court is of the opinion that it should focus primarily on the possibility that the pre-certification compromise is the product of collusion.

This Court hereafter discusses two primary means by which it properly can carry out the dual purposes of Rule 23(e): (1) the ordering of settlement notice to putative class members; and (2) close judicial scrutiny of the reasonableness of class counsel's attorney's fee to be recovered in connection with the proposed settlement. In Part IV.B., *infra,* the Court concludes that notice of the proposed individual settlement to absent class members, although usually necessary, is not compelled as a matter of law in every case, but rather should be dependent upon whether or not the disclosed facts surrounding the compromise dictate class-wide disclosure in order to prevent Rule 23 abuse or protect the interests of putative class members. In Part IV.C., *infra,* the Court holds, consistent with its prior ruling in *Foster v. Boise-Cascade, Inc., supra,* that it is obligated to review the size of class counsel's attorney's fee for reasonableness before approving any settlement of a class action, regardless of the nature of counsel's fee arrangement.

### B. Necessity of Notice to Absent Class Members

#### 1. History of Rule 23(e)

Prior to adoption of present Rule 23 in 1966, former Rule 23(c) mandated notice of a recommended compromise or dismissal in any "true" class action, but left the necessity of notice to the judge's discretion in "hybrid" or "spurious" class suits. Wright, *supra* at 233. In the first preliminary draft of present Rule 23, published in 1964, these class action categories were deleted and a new subdivision (e) generally provided:

> "An action maintained as a class action shall not be dismissed or compromised without the approval of the court, and the court *in its discretion* may order that notice of a proposed dismissal or compromise be given to the class in such manner as the court may direct."

Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 34 F.R.D. 325, 387 (1964) (emphasis supplied). However, the drafters subsequently modified this language so that subdivision (e) now provides, *inter alia,* that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court may direct". The accompanying Advisory Committee's Note offers no explanation of the reason for the modification, but merely provides that subdivision (e) "requires approval of the court, after notice, for the dismissal or compromise of any class action". Advisory Committee's Notes of the 1966 Amendments to Rule 23, 39 F.R.D. 98, 107 (1966).

Although Rule 23(e) and its history thus appear to compel notice whenever a plaintiff moves for dismissal of a class action, the rule's language has been accorded a flexible as opposed to a wooden interpretation by some courts and authorities. *See, e. g., Berse v. Berman,* 60 F.R.D. 414 (S.D.N.Y.1973); *Elias v. National Car Rental System, Inc.,* 59 F.R.D. 276 (D.Minn.1973); Wright, *supra* § 1797, at 234–37; *Manual for Complex Litigation, supra* § 1.45, at 48–49; Harvard study, *supra* at 1542 n. 32. *See generally* Wheeler, *Predismissal Notice and Statutes of Limitations in Federal Class Actions After American Pipe & Construction Co. v. Utah,* 48 S.Cal.L.Rev. 771, 785–812 (1975) (hereinafter "Wheeler, *Predismissal Notice*") (encourages functional approach in assessing Rule 23 obligations). These courts and commentators have re-

laxed the notice requirement and permitted dismissal upon a determination, through examination of the facts of the particular case, that notice is unnecessary to accomplish the dual purposes of class protection and prevention of Rule 23 abuse.[4]

### 2. Functional Approach to the Notice Determination

As discussed earlier, the notice requirement can be used by the Court to carry out both of its Rule 23(e) approval functions. *See, e. g., Muntz v. Ohio Screw Products,* 61 F.R.D. 396, 398 (N.D.Ohio 1973). The possibility of notice to absent class members and the soliciting of their objections, if any, to the disclosed settlement can serve as a deterrent to collusion on the part of the private parties to the litigation and help guarantee an adequate consideration of the class interest. *Yaffe v. Detroit Steel Corp.,* 50 F.R.D. 481, 483 (N.D.Ill.1970); *Brookhaven Housing Coalition v. Sampson,* 65 F.R.D. 24, 25 (E.D.N.Y.1974); *Wright, supra* at 237. At the same time, notice of the individual compromise enables potential class members to protect their own interests by allowing them to object to the present application, to take over representation of the class action or to file their own suit elsewhere. *Rothman v. Gould,* 52 F.R.D. 494, 496 (S.D. N.Y.1971); *Wright, supra* at 232; Harvard study, *supra* at 151 & nn. 30, 31.

A functional approach to the notice requirement is viewed as preferable to a mandatory notice rule in that the difficulties and expense of pre-certification notice can be avoided in those instances where notice would not realistically further the dual aims of Rule 23(e).[5] *See Manual for Complex Litigation, supra* § 1.45, at 48–49; Harvard study, *supra* at 1542 & n.32. This Court hereafter discusses the manner in which other courts, in light of each of the policies enunciated above, have applied the notice requirement to the pre-certification dismissal of the class claim, especially when coupled with an individual settlement. Additionally, the procedure which this Court will employ to carry out its notice responsibilities is outlined.

### a. Notice and Prevention of Rule 23 Abuse

The cases which have dispensed with notice in granting a plaintiff's requested dismissal of a class action have not involved an attempted compromise by the named plaintiff coupled with a motion to dismiss the class claim. Rather, in every reported decision located by this Court which discusses the propriety of class notice prior to approval of an individual settlement, the courts unanimously have concluded that notice is necessary. *See Duncan v. Goodyear Tire & Rubber Co.,* 66 F.R.D. 615, 616 (E.D.Wis. 1975); *Rotzenburg v. Neenan Joint School Dist.,* 64 F.R.D. 181, 182 (E.D.Wis.1974); *Rothman v. Gould,* 52 F.R.D. 494, 496 (S.D. N.Y.1971) (publication notice); *Yaffe v. Detroit Steel Corp.,* 50 F.R.D. 481, 483 (N.D.Ill. 1970); *Philadelphia Electric Co. v. Anacon-*

---

**4.** The Fourth Tentative Draft of the Proposed Uniform Class Action Act provides that "[i]f the action has not been certified, notice of the proposed dismissal or compromise *may* be ordered by the court." *See* 4 C.A.R. 491, 495 (1975) (emphasis supplied).

**5.** Obviously, the chief difficulty stems from the lack of a concrete class definition on either a geographic or temporal basis. If notice is deemed necessary, primary reliance must be placed on the scope of the class as alleged in the complaint in deciding who is entitled to notification of the proposed settlement. Because plaintiff's counsel, as a matter of protection, typically will allege the existence of the largest potential class subject to the conduct of the defendant, notice costs could be extremely

high. And given that plaintiff has raised the spectre of a class suit, the Court would be inclined to assess notice costs against plaintiff, *see* Harvard study, *supra* at 1542, 1544 n. 42, especially when the plaintiff seeks to settle his individual claim before exploring through discovery whether an actual class exists.

The Court recognizes that Rule 23(e) leaves the form and extent of notice to the Court's discretion and that, for instance, publication notice can be given in lieu of individual notice. *See, e. g., Rothman v. Gould,* 52 F.R.D. 494, 501 (S.D. N.Y.1971). However, if it is determined that notice is in fact necessary to protect the absentees' interests, it is arguable whether publication notice effectively accomplishes this task.

da *American Brass Co.,* 42 F.R.D. 324, 328 (E.D.Pa.1967). The use of class notice as a means of discouraging collusion between the private parties is summarized in *Yaffe v. Detroit Steel Corp.; supra:*

> "Armed with class action allegations in their complaint, and with the possibility of amendment as of right, the named plaintiffs have additional leverage when negotiating for settlements of their individual claims. This is so because the defendants might well be willing to pay the named plaintiffs a premium for the elimination of the class, a premium to which they are, of course, not entitled. . . . It was undoubtedly fear of such abuses which led the drafters of Rule 23 to require court approval, and notice to class members, of all class action settlements."

*Id.* at 483; *cf. Brookhaven Housing Coalition v. Sampson,* 65 F.R.D. 24, 25 (E.D.N.Y. 1974).

Clearly, as the above cases indicate, the presumption should be that the spectre of abuse in an individual settlement and class dismissal at the pre-certification stage is sufficient to warrant notice to absent class members before court approval of any such arrangement. *See also* Harvard study, *supra* at 1543–46; Dole, *Class Action Settlements, supra* at 976–85. And when no effort has been made by the parties, particularly plaintiff, to ascertain through discovery whether or not a class actually exists before negotiating a private settlement, as is true in the case at bar, this lack of action on behalf of the class increases both the likelihood that the defendant has "bought off" the representative plaintiff in return for an agreement to dismiss the class assertion and the corresponding necessity of class notice as a means of preventing such collusion. *See Rothman v. Gould,* 52 F.R.D. 494, 500–01 (S.D.N.Y.1971). Under these circumstances, the court in *Rothman v. Gould, supra,* even suggested without so holding that

> "it may mean that interdependence of the individual settlement and a class dismiss-

al must be deemed always suspect, and perhaps never suitable."

*Id.*

■ Because a functional approach to the notice requirement is preferable to a "compulsory notice" rule, and depends upon the facts and circumstances of each case, *Berse v. Berman, supra* at 417, this Court goes no further than to declare as a general rule that class notice of the individual compromise is necessary to prevent the use of the Rule 23 class allegation as a coercive device. One need not speculate in the abstract as to the factual circumstances in a given case which might justify an exception to the notice requirement. Rather, this Court will consider the facts surrounding a proposed individual settlement, with the aid of answers to the court interrogatories delineated in Part V, *infra,* and on the basis of that information determine whether or not class notice is in fact necessary to curb the apparent possibility of a collusive settlement.

### b. Notice and Protection of the Interests of Absent Class Members

If a proposed compromise provides for monetary or injunctive relief to certified class members, then the function of Rule 23(e) notice is to ensure that all persons directly affected by settlement will be heard. Wright, *supra* § 1797, at 226, 234. Thus, where the substantive rights of class members are at stake, notice has been viewed as constitutionally compelled by the due process clause of the Fourteenth Amendment. *Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 834 (2nd Cir. 1973).

However, where a settlement of the named plaintiff's claim prior to class certification makes no provision for putative class members, different interests and expectations are at stake because a pre-certification dismissal does not legally bind absent class members. Harvard study, *supra* at 1541 & n. 29. *See EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1361 (6th Cir. 1975) (alleged class member not barred by doctrine of *res judicata* ). Until a class is actually defined, any interest or expectation by an alleged member in a recovery,

monetary or otherwise, against the defendant must be classified as speculative. Indeed, the primary interest of alleged class members in the dismissal of an uncertified class action is properly termed a "reliance interest". *See* Wheeler, *Predismissal Notice, supra* at 804–807. Thus,

> "class members with individually recoverable claims may have relied upon informal publicity about the existence of the class suit and abstained from filing individual or class claims."

Harvard study, *supra* at 1540 & n. 24 (footnote deleted). The primary purpose of notice in the pre-certification stage would therefore be to inform potential class members that they may no longer rely on the asserted class action, but must file a separate suit or intervene in the present action as a representative plaintiff. Wright, *supra* at 232.

In *Berse v. Berman,* 60 F.R.D. 414 (S.D.N.Y.1973), the court, in considering whether notice of a dismissal should be given to absent class members, opted for a flexible case-by-case approach, holding that "the likelihood of prejudice [to absent class members] can only be determined by examining carefully the circumstances of each case". *Id.* at 417. As in *Elias v. National Car Rental System, Inc., supra,* the court appraised the probability that purported class members actually were relying on the action, considered whether or not the statute of limitations would bar the assertion of claims by class members and concluded that "the circumstances of this case do not present sufficient danger of prejudice to absent class members to require . . . notice". 60 F.R.D. at 417. One commentator has rejected the necessity of class notice prior to class certification in all cases on the grounds that this abstract reliance interest will rarely exist in fact because nine factors must be present before such an interest may be prejudiced sufficiently to warrant notice. Wheeler, *Predismissal Notice, supra* at 804–07. Moreover, the possibility of prejudice has been diminished greatly by the Supreme Court's recent decision that

the commencement of a class action tolls the applicable statute of limitations as to all members of the purported class until the class is dismissed. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 561, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). *See Pearson v. Ecological Science Corp.,* 522 F.2d 171, 178 (5th Cir. 1975), *rehearing denied,* 525 F.2d 1407, *cert. denied sub nom. Skydell v. Ecological Science Corp.,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); Harvard study, *supra* at 1448–54, 1540–41.

In accordance with the functional approach to the Rule 23(e) notice determination, as employed in *Berse v. Berman, supra,* and *Elias v. National Car Rental System, Inc., supra,* this Court will consider the relevant facts and circumstances surrounding the suit before determining whether class notice actually is necessary to protect the possible reliance interest of putative class members. Obviously, recognition of this reliance interest presupposes that one or more class members has actual knowledge of the pending class action. If there has been little, if any, formal or informal publicity about the suit, then it is highly improbable that such an interest exists in fact. Moreover, in view of Local Rule 6 of the Southern District of Texas, which prohibits communications between any formal party or counsel to the litigation and absent class members without court approval, it is highly improbable that class members will possess knowledge of the action. In any event, with the benefit of answers to court-ordered interrogatories which inquire as to the publicity attendant to the litigation and whether or not any potential class member has contacted any formal party or their counsel with respect to this suit, *see* Part V, *infra,* this Court will be in a better position to assess realistically whether or not class notice is necessary to protect the reliance interest of absent class members.

#### c. Conclusion as to the Necessity of Notice to Alleged Class Members

Before determining the contours of its Rule 23(e) notice obligations in connection

with an individual settlement and class dismissal, this Court will require counsel to submit full responses under oath to the interrogatories listed in Part V, *infra.* On the basis of the sworn answers to these interrogatories, this Court will (1) assess the likelihood that asserted class members are in fact aware of the class suit and relying upon the class representative to prosecute their claims; and (2) consider whether the possibility of collusion is sufficient to mandate disclosure of the private settlement to the asserted class. By examining the factual circumstances surrounding the proposed compromise through this fact-finding procedure, the Court thereafter can decide whether notice must be sent to alleged class members in order to fulfill the dual purposes of Rule 23(e). In most instances, a settlement of the individual claim prior to the Rule 23(c)(1) class determination will necessitate class notice.

C. *Rule 23(e) Approval of Attorneys' Fees to be Recovered by Plaintiff's Counsel as Part of Individual Compromise and Class Dismissal*

1. *Potential for Rule 23 Abuse During Negotiation Stage of Alleged Class Action*

As discussed in Part III., *supra,* the major threat posed by the settlement of the named plaintiff's claim prior to class certification is that the named plaintiff and his counsel will have used the assertion of a class to increase their personal bargaining leverage and extract from the defendant a settlement which, although prompted in part by defendant's interest in foreclosing the possibility of a class recovery, makes no provision for the asserted class members. The class allegation increases both the probability of a settlement, based in part on the greater cost to defendant of class-wide discovery, as well as the likelihood that the individual settlement will be larger in size. Because the named plaintiff and his counsel can therefore be unjustly enriched by the Rule 23 class allegation at the expense of the asserted class, receipt of the proceeds of

any such individual settlement constitutes on its face a clear abuse of the class action concept. *See, e. g., Yaffe v. Detroit Steel Corp.,* 50 F.R.D. 481, 483 (N.D.Ill.1970); Harvard study, *supra* at 1540.

Judge Renfrew of the Northern District of California has elaborated on this problem, with special emphasis on the role played by plaintiff's counsel:

"There is legitimate concern that plaintiffs might bring class actions solely for the additional bargaining leverage that the class allegation gives them in securing a favorable disposition of their own claim. The Court must be alert not only for express settlements, but also for dispositions that may hide an undisclosed settlement. The potential for abuse is greatest when a settlement or other disposition is suggested either before discovery or before certification of the class. An attempt by plaintiff to dismiss an action, or the class action portions of it, before any discovery has been made raises serious questions about the integrity of plaintiff's attorney. Rule 11 of the Federal Rules of Civil Procedure provides that an attorney's signature on a pleading constitutes his certification that he has read the pleading and that he believes there is good ground to support it. An obvious and important question is what has occurred to change that original belief. Because some discovery is frequently necessary to evaluate the class allegation, the period of time that elapses from the time a suit is filed to the time that the certification decision is made may be quite extensive. The possibility that certification may be granted favors the plaintiff in settlement negotiations. Therefore, it is important that a suit brought as a class action be treated as such for purposes of a dismissal or compromise until there is a formal determination that a class action is not proper. In this approach, there may be significant problems, particularly of notice to the undetermined class, but the court can use its discretion to make an order appropriate to the situation. More significantly,

any other solution may be at the expense of the absent members of the class."[6] The Honorable Charles B. Renfrew, *Negotiation and Judicial Scrutiny of Settlements in Civil and Criminal Antitrust Cases,* 70 F.R.D. 495, 500–01 (footnotes deleted). Moreover, as this Court stressed recently in *Foster v. Boise-Cascade, Inc.,* 420 F.Supp. 674, 684–88 (S.D.Tex.1976), it is a reality of class action life that the potential for such abuse lies chiefly in the hands of plaintiff's counsel who, as a negotiator, unfortunately must represent three distinct and inherently conflicting interests: the named plaintiff's, the asserted class members' and his own. *See, e. g., Saylor v. Lindsley,* 456 F.2d 896, 900–901 (2nd Cir. 1972); Harvard study, *supra* at 1592–97, 1605 & n. 115; *Manual for Complex Litigation,* 1 J. Moore, Federal Practice, Part 2 § 1.46, at 58 (2d ed. 1975) (hereinafter *"Manual"*). Since defendant and its counsel primarily are concerned only with the total dollar cost of the settlement, plaintiff's counsel will have primary control during negotiations in deciding how the total payment will be shared by the three interested parties, including himself.[7] *See Foster, supra* at 686–88. Thus, in an attempt to protect the class concept from abuse, courts have become increasingly attentive to the reasonableness of the fee to be recovered by plaintiff's counsel as part of a proposed compromise of a class action. *See Foster, supra and cases cited*

**6.** The court recognizes that Local Rule 6 of the Southern District of Texas, by requiring prior court approval of communications between plaintiff or his counsel and potential class members, restricts the ability of plaintiff's counsel to ascertain informally whether or not there is a factual basis for the class assertion. However, Local Rule 6 does not prohibit such communications, but merely requires court approval when undertaking them. Such court approval is, in meritorious situations, readily obtainable. Thus, the settlement of the individual claim prior to the discovery by plaintiff's counsel of any facts pertinent to the class question, as is the case here, in no way furthers the public interest contemplated by the Rule 23 allegation and raises the distinct possibility that the initial class allegation was not made in good faith. Additionally,

"while the class lawyer will be expected to take a less enthusiastic stance on his case once he becomes a settlement proponent, a

*therein; Manual, supra* § 1.47; Harvard study, *supra* at 1604–18.

### 2. Control of Plaintiff's Counsel's Attorney's Fee as Primary Means of Preventing Rule 23 Abuse

As pointed out in Part IV.A., *supra,* when the Court is asked to approve a settlement of the named plaintiff's claim during the pre-certification stage, and the settlement makes no provision for the asserted class, its primary task should be to ensure that the abusive practice summarized above has not occurred and that plaintiff's counsel has not benefited unreasonably from the compromise arrangement.

### a. Contingent Fee Agreements

However, in the instant case, counsel argues that the contingent fee agreement entered into with the named plaintiff for purposes of settlement and the $1,200.00 fee to be collected pursuant thereto are not properly subject to judicial scrutiny. It is stated in support thereof that there is no request directed to the Court by the parties to "award" a fee, and that judicial interference with the contingent fee contract would constitute an unconstitutional impairment of a contract obligation which would be in derogation of policy considerations. *See, e. g., Steckel v. Lurie,* 185 F.2d 921 (6th Cir.), *cert. denied,* 340 U.S. 953, 71 S.Ct. 572, 95

sharp reversal of position without any apparent basis in discovery or new case law should be suspect as evidence of a possible sell-out." Harvard study, *supra* at 1575 (footnote deleted).

**7.** Plaintiff's counsel will have a financial interest in the settlement fund if the proposed compromise presented to the Court for approval specifies a particular monetary payment to be made by defendant to counsel, or if counsel is relying on a percentage arrangement with his client. However, where the settlement provides that the Court will fix a reasonable attorney's fee for plaintiff's counsel, *see, e. g., Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 167 (3d Cir. 1975); *Grunin v. International House of Pancakes,* 513 F.2d 114, 120 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), counsel's self-interest in the negotiated settlement fund is effectively dissipated.

L.Ed. 687 (1950); *Tenney v. Miami Beach,* 152 Fla. 126, 11 So.2d 188 (1942); *Webster County Soil Conservation Dist. v. Shelton,* 437 S.W.2d 934 (Ky.1969). *See generally* Annot., 12 A.L.R.3d 1384 (1971).

### (1) Timing of Counsel's Fee Agreement with Plaintiff

This Court is unswayed by counsel's argument that the nature of his fee arrangement immunizes his fee from judicial review because no separate award of fees is contemplated as part of the settlement. Aside from concluding in Part IV.C.3., *infra,* that all fees to be recovered by plaintiff's counsel in class action litigation, from whatever source derived, are subject to the Court's review and control, the Court is especially unwilling to accord special significance to the contingent fee arrangement entered into in this particular case because of the relevant chronology behind its execution. *See* Part II., *supra.*

Suit was filed on November 4, 1975; plaintiff's class interrogatories were submitted to defendant on February 20, 1976, and never answered; counsel entered into the contingent fee agreement with the named plaintiff on March 11, 1976, which provided that counsel would receive 40 percent of any settlement prior to trial; and the settlement proposal was submitted to the Court on May 6, 1976. Although the particular circumstances surrounding these events are not delineated, the timetable clearly suggests that counsel entered into the forty percent (40%) fee agreement with the named plaintiff during the time period that a settlement was being negotiated with defendant.[8] The fact that counsel chose to contract for his $1,200.00 fee with plaintiff in an independent document during the settlement negotiations, rather than provide in the settlement agreement for a payment of $1,800.00 to plaintiff and $1,200.00 as a fee to counsel, should be of no significance to the Court. To hold otherwise would exalt mere form over substance.

Moreover, because the fee contract was executed months *after* the attorney-client relationship commenced, at a time when the litigation was reaching its culmination, the Court would be justified in presuming the fee contract void as against public policy. *See Kiser v. Miller,* 364 F.Supp. 1311, 1319 (D.D.C.1973); *Spilker v. Hankin,* 88 U.S. App.D.C. 206, 188 F.2d 35 (1951).

### (2) Contingent Fee Arrangements and Rule 23

■ The Harvard study, *supra,* concisely describes the numerous bases on which counsel bringing a class suit may recover a fee:

"Typically attorneys' fees are fixed by a contract between the attorney and client. Fee contracts between a class attorney and all members of a class are rare, however, due to the large number of class members. Nevertheless, a class attorney may attempt to arrange for fees through contract with the named plaintiff or other class members, or with the class opponent as part of a settlement. Alternatively, the basis for fee recovery in class actions may be noncontractual. A statutory provision may authorize courts to order unsuccessful litigants to pay the fees of their victorious counterparts; this is the usual source of fees in class suits for injunctive or declaratory relief. A judgment or settlement in damage litigation creates a 'common fund' from which attorneys' fees may be drawn under an unjust enrichment theory. Occasionally, a class opponent's bad faith may justify assessing him for the class attorney's fees."

*Id.* at 1606–07 (footnotes deleted). The Harvard study continues:

"Where the only basis for a fee award is noncontractual, the court's authority to determine the amount of the award to the class attorney is clear. Even where there is a fee contract, courts have the

---

**8.** Given the pertinent chronology, to classify counsel's fee agreement with the named plaintiff as "contingent" is scarcely descriptive of a fee arrangement entered into after settlement negotiations had commenced and perhaps culminated in a settlement offer by defendant acceptable to plaintiff.

general power to override it, and set the amount of the fee."

*Id.* at 1607 (footnote deleted). Thus, attorneys' fees agreements generally are "of special interest and concern to the courts" and are "not to be enforced upon the same basis as ordinary commercial contracts". *Spilker v. Hankin,* 88 U.S.App.D.C. 206, 188 F.2d 35, 39 (D.C.Cir. 1951); *see* Harvard study, *supra* at 1607 n. 130 *and cases cited therein.*

■ However, aside from acknowledging the general authority of the Court to monitor the level of attorneys' fees, even if pursuant to private agreement,[9] courts have recognized that the special nature of class litigation and the possibility for abuse as outlined above necessitate and warrant close judicial scrutiny of plaintiff's counsel's fee, even if it is based on a contingent fee contract with the named plaintiff and/or individual class members. *See, e. g., Kiser v. Miller,* 364 F.Supp. 1311 (D.D.C.1973), *aff'd in part and remanded in part on other grounds sub nom. Pete v. UMW Welfare & Retirement Fund of 1950,* 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975) (en banc); *United Federation of Postal Clerks v. United States,* 61 F.R.D. 13 (D.C.D.C.1973); *Illinois v. Harper & Row Publishers, Inc.,* 55 F.R.D. 221 (N.D.Ill.1972); *Manual, supra* § 1.47, at 64–65; Harvard study, *supra* at 1609–11; Comment, *Computing Attorney's Fees in Class Actions: Recent Judicial Guidelines,* 16 B.C.Ind. & Com.L.Rev. 630, 640–44 (1975). Thus, in *Illinois v. Harper & Row Publishers, Inc., supra,* an antitrust class action, Judge Decker made the following observations about the applicability of the contingent fee approach to attorneys' fees in public-oriented class litigation:

"On the whole, I think counsel and the bench in class action suits have adhered all too closely to this contingent fee syn-

drome, and the time has come to inject a modicum of flexibility and creativity into the award of counsel fees. If Rule 23 is to be preserved against deserved criticism, some attempt must be made by the court to suit the award of fees to the performance of individual counsel in light of the size of the settlement. Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, 'A lawsuit is a fruit tree planted in a lawyer's garden.' "

55 F.R.D. at 224. Judge Decker therein subsequently "disowned" the contingent fee formula and, based upon his analysis of the attorneys' work effort, determined a reasonable fee. As pointed out in the Harvard study, *supra,* the court gave no indication that the fee obligations of individual plaintiffs and class members who entered into contingent fee contracts with counsel would be any different from the fee obligations of nonsigning class members. *Id.* at 1609–10.

Moreover, in *Kiser v. Miller, supra,* Judge Richey rejected fee agreements entered into by counsel with named intervenors and 401 class members on the grounds that they were "void as against public policy" and not in furtherance of Rule 23. Judge Richey aptly summarized his basis for refusing to enforce the fee agreements:

"The facts of this case exemplify the inherent controversy and problems attendant with the question of counsel fees in class actions. The fundamental concern has been that the attributes of the class action—speed and efficiency in the administration of justice—will be obliterated if certain factors are left uncontrolled. The potential for abuse lies in

**9.** Two mutually-exclusive rationales support a judicial review of any contingent fee contract for reasonableness: (1) the special fiduciary nature of the attorney-client relationship; and (2) the court's disciplinary powers over attorneys practicing before them. *See generally Special Project—Recent Developments in Attorneys' Fees,* 29 Vand.L.Rev. 685, 710–18 (1976). The principal concern of the courts with respect to contingent fee agreements is

that they give the attorney a financial interest in the outcome of the litigation, and, in particular, influence the attorney's decision as to whether to accept a settlement. F. Mackinnon, Contingent Fees for Legal Services 5 (1964). This possibility that an attorney's self-interest may influence the manner in which the suit is resolved obviously increases when the attorney is representing an unknown class.

the area of unreasonable charges for attorney fees and improper solicitation of such fees from actual or potential class members. As a preventive measure for such abuses, it has been strongly recommended that the matter of attorney's fees be left to the determination of the Court using a standard applicable to the unique situation of a class action."

.    .    .    .    .

"The question of appropriate counsel fees has been tied to apron strings of the contingent fee percentage for too long. In saying this, the Court is not unmindful that contingent fees in many instances, as a practical matter, have a long tradition in the legal profession, and have served and will serve a useful public purpose. However, in class actions, under Rule 23, it is incumbent upon the bar and bench to apply their imagination to a solution for this pressing problem."

*Id.* at 1315.

The Harvard study, after analyzing the two opinions discussed above, concludes:

"Judicial hostility to percentage fee contracts in class actions is generally appropriate. If such contracts are used only as the measure of the fee charged signing class members, and if the fee such contracts set is significantly larger than the fee a court would award using more neutral criteria, a possibility of conflict of interest arises. An attorney may not regard all members of the class as equally his clients but instead, in situations where litigation choices have a differential impact upon signing and nonsigning class members, may give extra weight to the interests of the class members who have contracted for his services. For example, if the majority of the class members who enter into the fee agreement have individually recoverable claims, and if the total number of class members who sign the agreement is not large, there is a risk that an attorney will attempt to treat the signing class members as individual clients, settle their claims, and terminate the class suit."

Harvard study, *supra* at 1610. Such an analysis, although aimed at the special problem of contingent fee agreements with class members, applies with equal force in the more basic context of a "signing named plaintiff" and nonsigning putative class members. The possibility exists that, because of the executed fee agreement with the individual plaintiff, counsel will attempt to settle the individual claim of his "paying client" and not concern himself with "the more remote question of the public interest". The Honorable Charles B. Renfrew, *Negotiation and Judicial Scrutiny of Settlements in Civil and Criminal Antitrust Cases,* 70 F.R.D. 495, 499 (1976), *quoted at length in Foster, supra* at 694–95.

The present edition of the *Manual for Complex Litigation* urges courts to refuse to enforce contingent fee contracts in approving attorneys' fees sought in connection with a class action, "or to be moved by them in determining the compensation warranted by the facts". *Manual, supra* § 1.47, at 65. Additionally, the Tentative Draft of the Fourth Revision of the *Manual for Complex Litigation,* in a new subsection, § 1.47(b)(2), on contingent fee contracts, stresses that a contingent fee agreement with the individual plaintiff should be upheld only when the resulting fee is a reasonable one.

█ Counsel argues that courts should enforce contingent fee agreements on the policy ground that to do otherwise would discourage counsel from filing and settling class actions, and in particular, Title VII civil rights actions. The Harvard study has adequately countered this position:

"[T]oleration of percentage fee contracts may be plausibly justified on the ground that such contracts offer attorneys a necessary incentive to initiate [a] class suit. Through use of appropriate criteria in setting the amount of fee awards, however, courts can create an adequate incentive for attorneys to bring class suits without surrendering control over the amount of the fee."

Harvard study, *supra* at 1611 (footnote deleted). This Court has no intention of dis-

couraging reasonable settlements. Rather, by announcing that contingent fee agreements entered into in class litigation are not sacrosanct, the Court intends to review the basis in fact for a proposed fee to plaintiff's counsel and the actual work effort exhibited by counsel before authorizing the enforcement of such contingent fee agreements.[10]

### (3) Contingent Fee Arrangements and Title VII

It is a maxim within the Fifth Circuit that suits brought pursuant to the provisions of Title VII "are inherently class suits". *Rodriguez v. East Texas Motor Freight*, 505 F.2d 42, 50 (5th Cir. 1975); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 306 (5th Cir. 1973). Accordingly, because it is a rare Title VII complaint that does not contain a class allegation, it is unnecessary as a practical matter to sever, for purposes of assessing the proper scope of the fee inquiry, the import of a class allegation from the import of a Title VII allegation. Thus, in view of this Court's foregoing analysis of the scope of its attorneys' fees responsibilities under Rule 23, the determination of the nature and scope of the attorney's fee inquiry in the particular context of a Title VII action is necessary only when the action is solely on behalf of the named plaintiff.

However, counsel's brief does not address the fee issue on the basis of the class nature of the suit in question and thus does not consider the case authorities cited in the Court's previous discussion. Rather, as was done by counsel for plaintiffs in *Foster, supra*, counsel is content to focus solely on the Title VII nature of the suit and to

contend that the proposed attorney's fee is immunized from judicial scrutiny simply because the Title VII attorneys' fee provision,[11] 42 U.S.C.A. § 2000e–5(k), is inapplicable in the absence of a request that the Court "award" a fee as part of the proposed settlement.

This Court, in Part IV.C.2.a.(1), *supra*, has rejected counsel's technical argument that the nature of the fee arrangement executed in this case effectively shields the proposed fee from judicial review. Moreover, the Fifth Circuit Court of Appeals in the landmark case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), has indicated that a contingent fee arrangement entered into in a Title VII case is not controlling in determining the fee to be paid to plaintiff's counsel, but is only a factor to be considered:

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. But as pointed out in *Clark v. American Marine*, [320 F.Supp. 709 (E.D.La.1970), aff'd, 437 F.2d 959 (5th Cir. 1971)],

'[t]he statute does not prescribe the payment of fees to the lawyers. It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyers a percentage contingent fee that would be greater than the fee the court might ultimately set. Such ar-

---

**10.** In order to create an incentive in plaintiff's counsel to effect a compromise on behalf of the absent class, this Court will place heavy emphasis on the scope of the relief obtained by counsel in assessing the reasonableness of the proposed attorney's fee. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Foster, supra* at 693. Accordingly, where the settlement only encompasses the claim of the named plaintiff, reasonable compensation will be lower than that approved for an attorney who has represented the class not only in pleadings but in fact.

**11.** Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), provides:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

rangements should not determine the court's decision. *The criterion for the court is not what the parties agreed but what is reasonable.'*

320 F.Supp. at 711."

*Id.* at 718 (emphasis supplied). Thus, in *Miller v. Mackey Int'l, Inc.*, 515 F.2d 241 (5th Cir. 1975) (per curiam), in which plaintiff's counsel sought one-third of a settlement fund as a fee in accordance with a contingent fee arrangement, the Fifth Circuit remanded for further consideration in light of *Johnson v. Georgia Highway Express, Inc., supra*, specifically noting that "the court apparently did not take into consideration, or at least made no mention of the fact, that this was a contingent fee case". 515 F.2d at 243.

Regardless of the applicability *vel non* of the Title VII attorneys' fees statute to the particular fee arrangement in this case in which a class was alleged, a more fundamental inquiry as to the true scope and meaning of Title VII ultimately will surface for a court to resolve: does the special "public interest" nature of Title VII litigation obligate a Court to review the basis for and size of plaintiff's counsel's fee in every Title VII case, even when there is no allegation of a class? *See, e. g., Foster, supra* at 694–95; Chayes, *The Role of the Judge in Public Law Litigation*, 89 Harv.L.Rev. 1281 (1976). Because Rule 23(e) clearly provides a jurisdictional base for the Court's inquiry into the fee proposed in this case, the Court need not reach and resolve that issue at this time.

3. *Conclusion as to the Court's Role in Monitoring Attorneys' Fees When Individual Settlement and Class Dismissal Occur*

On the basis of the foregoing discussion, the Court concludes that it is obligated under Rule 23(e) to ensure that plaintiff's counsel in an alleged class action does not receive an exorbitant fee for the settlement of the named plaintiff's claim to the exclusion of the class.

The nature of counsel's fee arrangement, whether it be with the named plaintiff or with the defendant, will have no bearing on the scope of the inquiry. In every such case, "[t]he criterion for the court . . . [will be] not what the parties agreed but what is reasonable". *Johnson v. Georgia Highway Express, Inc., supra* at 718.

The Court is not declaring that contingent fee agreements will not be given consideration in class actions, nor does this analysis preclude the Court from looking to a contingent fee agreement in determining a reasonable fee. *See, e. g., Pitchford v. Pepi, Inc.*, 531 F.2d 92, 110–11 (3rd Cir. 1975), *cert. denied*, 426 U.S. 935, 94 S.Ct. 2649, 49 L.Ed.2d 387 (1976); *Lindy Bros. Builders, Inc. v. American R ·& S Sanitary Corp.*, 487 F.2d 161, 164–69 (3rd Cir. 1973); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 47 F.R.D. 557 (E.D.Pa. 1969). Rather, because "[u]nder the present Rule 23, an allegation of class representation is attended by serious consequences," *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 42 F.R.D. at 328, counsel who maintain actions in this Court on behalf of a class will not be permitted to exercise exclusive control over the size of their fee, but will be required to disclose all details of the proposed fee to the Court for its review of reasonableness.

"The matter of counsel fees is a subject of great controversy, with the eye of [the] storm fixed on the standards by which the fee is regulated and set." *Kiser v. Miller, supra* at 1313. *See, e. g., Johnson v. Georgia Highway Express, Inc., supra; In re Westec Corp.*, 313 F.Supp. 1296, 1302–11 (S.D.Tex.1970). Expressions of concern over unreasonable attorneys' fees are, however, most prevalent in connection with Rule 23 class action litigation. As stated by Judge Will in *Liebman v. J. W. Petersen Coal & Oil Co.*, 63 F.R.D. 684, 701 (N.D.Ill. 1974):

"The principal attacks on the rule are largely the result of conduct by counsel for plaintiffs in some cases who have acted as though the rule was adopted for their benefit rather than for the multitude of individuals comprising the class or classes whose rights they were presum-

ably vindicating. Quick, cheap settlements, conflicting representation of more than one class, side deals for the payment by defendants of plaintiffs' counsels' fees, exorbitant fees, misuse or abuse of the class action, etc., have brought justifiable criticism of Rule 23 in action. It would be ironic indeed if class actions and the opportunity which Rule 23 presents to redress grievances which heretofore went unredressed were to be restricted or eliminated as a result of the conduct of a very small segment of the bar specializing in plaintiffs' representation."

At the present time, revisions of Rule 23 are being proposed and contemplated in order to minimize the potential for abuse outlined in this opinion. *See, e. g., Miller v. Mackey Int'l, Inc.*, 515 F.2d 241, 243–44 (Bell, J., specially concurring); *The Advisory Committee on Civil Rules: Current Deliberations*, 4 C.A.R. 288, 290–91 (1975). This Court can only add that until such time as Rule 23 is revised, existing law clearly compels a court to monitor settlements in this legal area so that an honored profession does not deteriorate in the eyes of the public to the level of a racket.

## V. PROCEDURES TO BE FOLLOWED TO OBTAIN COURT APPROVAL FOR THE INDIVIDUAL COMPROMISE AND DISMISSAL OF AN ALLEGED CLASS ACTION

■ The vast majority of class actions which are presented to this Court for settlement approval are Title VII cases. However, although Title VII actions are "inherently class suits," *Rodriguez v. East Texas Motor Freight*, 505 F.2d 42, 50 (5th Cir. 1975), this Court's experience has been that Title VII settlements typically are on behalf of the named plaintiff with no provision for the class. This disparity between theory and practice confirms the potential for Rule 23 abuse and necessitates the fashioning of a well-defined procedure which guarantees the appropriate consideration and review of such compromises in accord-

ance with the principles enunciated in this opinion.

Accordingly, in all alleged, but uncertified class actions for which an individual compromise is proposed, the following procedure will be followed:

*A. Settlement Package*—Counsel, in addition to submitting a copy of the proposed compromise and a proposed Order of Dismissal, jointly will submit complete, sworn answers to the following interrogatories as part of the settlement package: [12]

1. At what stage in the proceedings was the proposed settlement achieved? *See Manual for Complex Litigation, supra* § 1.46, at 50; *cf. Muntz v. Ohio Screw Products*, 61 F.R.D. 396, 399 (N.D.Ohio 1973).

2. Why have members of the alleged class been excluded from the monetary terms of the settlement agreement?

3. Is injunctive relief prayed for in the complaint? If so, is injunctive relief provided for in the settlement, and if not, why not?

4. Has any discovery been completed relative to determining whether this action is in fact a true class action?

5. If the answer to Question No. 4 is "yes," what is the nature of the discovery and what has it revealed? The Court is particularly interested in the view of plaintiff's counsel as to whether the discovered facts support a class under the law of this Circuit. *See, e. g., Held v. Missouri Pacific Railroad Co.*, 64 F.R.D 346 (S.D.Tex.1974); *Muntz v. Ohio Screw Products, supra* at 399; *Berger v. Purolator Products, Inc.*, 41 F.R.D. 542 (S.D.N.Y.1966).

6. If the answer to Question No. 4 is "no," why has no discovery been undertaken? *See* Part IV.B.2.a. § n. 6, *supra.*

7. Has either counsel or any formal party to the action been contacted by any potential class member with respect to this

---

12. *See Manual, supra* § 1.46, at 50–51 (listing of questions to be considered at approval hearing of class settlement).

suit? If so, explain. *See* Part IV.B.2.b., *supra.*

8. What is counsel's frank assessment as to the publicity, both formal and informal, attendant to this suit, especially with regard to prospective class members? Is the publicity such that notice of the proposed settlement should be sent to alleged class members so that they may pursue their individual claims? Why or why not? *See* Part IV.B.2.b., *supra; see, e. g., Berse v. Berman,* 60 F.R.D. 414, 416–17 (S.D.N.Y. 1973); *Elias v. National Car Rental System, Inc.,* 59 F.R.D 276, 277 (D.Minn.1973); Harvard study, *supra* at 1540–41; Wheeler, *Predismissal Notice, supra* at 805–806.

9. How and by whom are the attorneys' fees of plaintiff's counsel to be paid? What is the amount of the proposed fee? Why is the proposed fee a reasonable fee? (Counsel should submit the necessary documentation in accordance with the guidelines delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) to support the reasonableness of the fee.) *See* Part IV.C., *supra; Manual for Complex Litigation, supra* §§ 1.46–.47; *see, e. g., Foster v. Boise-Cascade, Inc.,* 420 F.Supp. 674, 684–88 (S.D.Tex.1976). In answering these interrogatories, "it is confidently expected that all counsel, serving as public men not less than advocates, will give the court the benefit of their objective wisdom as well as their familiarity with the concrete facts of the litigation . . . ." *Rothman v. Gould,* 52 F.R.D. 494, 496 (S.D.N.Y.1971).

*B. Preliminary Determination of Rule 23(e) Applicability*—A review of the answers to the court interrogatories may suggest that the requirements of Rule 23(e) are not applicable to the proposed compromise and dismissal. If discovery on the class question has been completed, the Court may determine upon its independent review of the facts that the requirements of Rule 23(a) are not satisfied and thus conclude, pursuant to Rule 23(c)(1), that the class allegation should be stricken. *See, e. g., Held v. Missouri Pacific Railroad Co., supra; Muntz v. Ohio Screw Products, supra; Berger v. Purolator Products, Inc.,*

*supra. But see* Harvard study, *supra* at 1543–44; Wheeler, *Predismissal Notice, supra* at 791–99. Under these circumstances, the settlement and dismissal can be entered routinely in accordance with Rule 41(a)(1).

*C. Preliminary Determination of Reasonableness*—Assuming that Rule 23(e) is applicable to the compromise, the Court should use the bifurcated approval procedure described in Section 1.46 of the *Manual for Complex Litigation, supra.* The Court initially should examine the terms of the settlement and determine whether the proposal appears reasonable on its face. As stated in the *Manual*:

"Unless the judge is preliminarily satisfied that the proposed settlement is within the range of possible approval, there is no point in proceeding with notice and a hearing."

*Id.* at 49.

Thus, the Court should ensure that the proposed compromise and dismissal is without prejudice to the rights of the putative class members. *See* Dole, *Class Action Settlements, supra* at 980 & n. 61. Additionally, the Court must examine the terms of the proposal and preliminarily assess the reasonableness of the compromise by comparing the probable merit of plaintiff's claim with the amount of the settlement. Of equal importance, the Court must determine whether the proposed attorney's fee to be recovered by plaintiff's counsel is within a range of reasonableness. If the information submitted in response to Interrogatory No. 9 is inadequate to permit such a determination, the Court can direct the submission of additional data relevant thereto by plaintiff's counsel. If the Court on the basis of the documentation supplied by counsel and any further inquiry deemed appropriate is not satisfied that the settlement is reasonable or that the fee approximates reasonable reimbursement for class counsel's work product, as analyzed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), the Court will reject the settlement proposal as unreasonable. If the fee is within a range of reason, and the other terms of the settlement ap-

pear fair, the Court will then consider whether notice to asserted class members is necessary.

*D. Determination of Rule 23(e) Notice Responsibilities*—If the Court does not reject the proposal on its face, it will, on the basis of counsel's sworn replies to the interrogatories, and in accordance with the functional analysis discussed in Part IV.B.2., *supra*, thereafter decide whether class notice must be given. If the Court concludes that notice is necessary, the views of all counsel will be solicited as to (1) the form and contents of the notice; (2) who should receive notice of the proposed dismissal; and (3) which party should bear the cost of the notice. *See, e. g., Duncan v. Goodyear Tire and Rubber Co.*, 66 F.R.D. 615, 617–19 (E.D.Wis.1975); *Rothman v. Gould, supra* at 496; *Manual for Complex Litigation, supra* § 1.46 at 51 & n. 50; Comment, *Notice, Preliminary Hearing and Manageability in Federal Class Actions*, 11 Hous.L.Rev. 121, 124–127 (1973). In addition, a hearing date will be set at which the objections of absent class members can be heard and evaluated.

*E. Hearing and Final Approval*—As stated above, if class notice is ordered, a hearing must be conducted at which class objections, if any, can be considered, as well as other matters pertinent to final approval. *See Manual for Complex Litigation, supra* § 1.46, at 51–52. Even if the notice requirement is waived, the Court may conclude that a hearing nevertheless is necessary prior to entry of the Order of Dismissal, i. e., to consider in more detail the basis in fact for class counsel's attorney's fee in order to arrive at a reasonable fee.[13]

## VI. CONCLUSION

In accordance with this Memorandum and Opinion, counsel jointly will provide the Court with sworn responses to the above-delineated interrogatories within twenty (20) days from the entry of this Order. Upon the filing of counsel's response, this Court will consider the proposed compromise pursuant to the procedures outlined above.

It is so ordered.

---

**13.** Because both parties at an approval hearing will be asserting an identical position that the settlement is reasonable, "the setting . . . [will] not [be] the familiar, and . . . comfortable, alignment of adversary interests," *Rothman v. Gould, supra* at 496, unless notice has been given and absent class members have appeared to contest the terms of the proposal.

In order to ensure that the hearing is meaningful on all aspects of the recommended compromise, particularly the attorney's fee question, the Court will consider the propriety of appointing an experienced practitioner to help analyze the agreement. *See generally Manual for Complex Litigation, supra* § 1.46, at 52–53; Harvard study, *supra* at 1571–72.