Ruthie M. SHELTON, Individually and on behalf of all others similarly situated, and James F. Williams, intervenor, Plaintiffs,

v.

PARGO, INC., a corporation, Defendant.

No. C–C–76–069.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 12, 1979.

---

Michael A. Sheely and Shelley Blum, Charlotte, N. C., for plaintiffs.

Micheal A. Almond, Fleming, Robinson, Bradshaw & Hinson, Charlotte, N. C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

This suit was filed on the 26th day of February, 1976, on behalf of the plaintiff Ruthie M. Shelton and other black persons allegedly subjected to racial discrimination in their employment by the defendant. On April 8, 1976, James F. Williams filed a motion to be allowed to intervene as plaintiff, and on May 10, 1976, his motion was allowed.

The suit was brought as a class action and treated as a class action, and some discovery took place; however, the evidence was not all in on the class action question, and no class had been formally certified.

Before a class had been certified by the court, the individual plaintiffs and the defendant agreed upon a settlement of the claims of the individual plaintiffs. Without waiting for court approval the parties carried out their agreement; the money was paid and a stipulation of dismissal was filed. When the settlement came on for approval this court directed that the stipulation be approved, upon condition that notice of the settlement be given to the potential class members so that the case could be brought to a fair, practical and economical conclusion.

The defendant appealed to the Fourth Circuit Court of Appeals.

On the 18th day of August, 1978, the Fourth Circuit, in a lengthy opinion relying heavily on law review articles and notes, reversed and remanded, holding that this court had abused its discretion by ordering that notice of the dismissal of the suit be given to putative class members. Such notice, the court stated, may not be required as a matter of routine before a class has been certified, but can be required in such cases only after a careful hearing, and must be based on findings demonstrating some need for notice, such as the possibility that the settlement was collusive, was prejudicial to the interests of putative class members, or concluded an action upon which putative class members were in fact placing a sufficiently "realistic" reliance. *See, e. g.,* 582 F.2d 1298, 1314. The Court of Appeals outlined the scope of the mandated inquiry as follows:

"[T]he District Court 'should focus primarily on the possibility that the pre-certification compromise is the product of collusion.' The rationale for thus giving 'less weight' to the possibility of prejudice to absent putative class members in the pre-certification context is that, unlike the situation in a certificated class action, a 'pre-certification dismissal does not legally bind absent class members,' and, before certification, the absent putative class member has at best a mere 'reliance interest,' the strength of which will vary with the facts of the particular case. As professor Wheeler has pointed out, and as the Court in *Magana* [*Magana v. Platzer Shipyard, Inc.* (S.D.Tex. 1977), 74 F.R.D. 61] underscored, this 'reliance interest' is at best 'speculative.' After all, 'no notice to purported class members is required upon the filing of a class action. Therefore, any reliance produced by such a filing arises as a consequence of such

persons learning of the action through the news media or some other secondary source. The danger of reliance is thus generally limited to actions that would be considered of sufficient public interest to warrant news coverage of either the public or trade-oriented variety. Also, reliance can occur only on the part of those persons learning of the action who are sophisticated enough in the ways of the law to understand the significance of the class action allegation.' Because this 're- liance interest' is often thought to be so 'speculative' as to warrant little or no consideration, a court should consider the relevant facts and circumstances in order to determine whether the possible reliance interest of the absent putative class members in the particular case is sufficiently realistic to make necessary class notice.

"*In 'focusing' on the possibility of collu- sion, on the other hand, the District Court should conduct a careful inquiry into the terms of the settlement, particularly the amount paid the plaintiff in purported compromise of his individual claim and the compensation to be received by plain- tiff's counsel, in order to insure that, un- der the guise of compromising the plain- tiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney.* . . .

"We repeat that the amount of the com- promise payment is an important fact to be given careful consideration by the Dis- trict Court in resolving the possibility of collusion in the settlement, but we would emphasize that the weight to be accorded this fact as well as all the other circum- stances surrounding the settlement, is a decision committed to the discretion of the District Court, whose decision is only to be reversed for clear abuse of that discretion."

582 F.2d 1298, 1314–15 (emphasis added) (footnotes omitted).

*Pargo* winds up as follows:

"We accordingly conclude that, before a District Court may consider or approve a voluntary pre-certification settlement of an action begun as a class action, it is not compelled to undertake the laborious process of arriving at a certification de- termination under 23(c)(1), with all the burdens such responsibility would entail. *Before it may do so, though, the court must, after a careful hearing, determine what 'claims are being compromised' be- tween the plaintiff and defendant and whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class mem- bers.* If, *as a result of such hearing,* the court is clearly satisfied that there has been no *abuse* of the class action device *and no prejudice to absent putative class members,* it may approve the settlement and dismissal without going through with a certification determination or requiring notice to be given to absent putative class members.

\*     ·     \*     \*     \*     \*

"The District Court should have given the parties a hearing, should have *inquired carefully into the circumstances of the settlement, and made findings* on wheth- er the settlement was tainted by *collu- sion,* or *whether absent putative class* members, with *a reasonable basis for a 'reliance' expectation, would be preju- diced by the settlement.*"

582 F.2d 1298, 1314, 1316 (emphasis added).

Nothing in the Circuit Court's opinion sheds any light on how a trial court can thus make findings about collusion among lawyers; about possible abuse of the class action device; about prejudice to putative class members; about their sophistication in the ways of the law (or lack of it); about their knowledge of or reliance on the suit, and about the "speculative" or "reasonable" nature of their reliance—without giving the putative class members notice *that their case is being heard*! That Court's amazing quotation from a Professor Wheeler is also this court's first encounter with the sugges- tion that the ignorant and therefore the weak are less entitled to rely on a court to protect them than the sophisticated and therefore the strong.

The practice of this court has been to require notice as a matter of course of any proposed settlement of a class action. I have required such notice in many cases, with no bad results whatever. Such notice alerts class members that their potential claims as to which the class suit has tolled the statute of limitations are no longer being protected, and therefore require further action by potential or actual class members if they are to be preserved. Notice having been given, little is to be accomplished by "collusive" practices of the sort envisioned in the *Pargo* opinion. It is difficult for a named plaintiff and defendant to prejudice class claims through private settlement if class claimants are notified that the courts remain available to them and that they must assert their own claims or lose them. With this prophylactic practice in operation, there is considerably less need to scrutinize the details of the monetary settlements of the named plaintiffs' claims and their lawyers' fees and place them on the public record.

No such settlement pursuant to notice has arisen to haunt court or counsel. No sleeping dogs have awakened to bark. Few previously unknown claimants have come forward. *Notice* of proposed judicial action, that prime ingredient of due process, has been given. Finality (a commodity valuable to employers and to plaintiffs) has been obtained at minimum expense.

The Circuit Court opinion *forbids* the trial court to require routine notice to potential class members that the class suit is being settled and dismissed. It then *requires* the trial court to satisfy itself, after "thorough inquiry," that the interests of those uninformed, unaware and unrepresented persons are not being prejudiced by "collusion." In thus satisfying itself, the court may not notify the people whose interests the court is expected to safeguard, but is effectively restricted to questioning the lawyers inexplicably suspected of collusion! A less realistic and less practical program— and one more at variance with the purposes of the class action rules and statutes— would be hard to devise. It makes the trial court, *de facto*, a guardian *ad litem* for

unknown people whom he is forbidden to notify or consult, and who may not even be aware the settlement is proposed.

I have not figured out how that program squares with equity, common sense, sound judicial administration, economy, or the purposes of the remedial statutes to which the *Pargo* opinion deals a severe blow. However, until the opinion is reversed or modified, district judges in this circuit must try to understand and follow it.

In conformity with the order of the Circuit Court, I have conducted a careful hearing (though, perforce, without notifying the class members), and have inquired carefully of the lawyers into the circumstances of the settlement, including the questions whether the settlement was "tainted by collusion, or whether absent putative class members, with a reasonable basis for a 'reliance' expectation, would be prejudiced by the settlement."

No evidence was supplied regarding how many if any of the persons in the affected class were "sophisticated enough in the ways of the law to understand the significance of the class action allegation." In fact, there was no information whether any of those people knew any law at all. No evidence was presented as to the publicity that the press may have given the suit.

The question of prejudice to the absent putative class members was not clarified by the hearing. Neither party advanced any evidence about what the settlement and the abandonment of the class suit would do to the absent, unrepresented putative class members.

Under the *Pargo* protocol the court is effectively required to rely on the lawyers (who by hypothesis are the engineers of any collusion) for information or stipulation about "collusion." This is not calculated to produce full disclosure of all pertinent information. However, the settlement figures in this case ($770 to plaintiff Shelton, $1,000 to plaintiff Williams, and $800 to the lawyers) are so small that collusion producing a monetary profit to anyone seems out of the question. Any "collusion" involved

here may amount to little more on the part of the defendant than a legal effort to pay as little as law and procedure require, and little more on the part of the plaintiffs than the choice by plaintiffs' counsel to cut their losses and get what they could for themselves and for the people who hired them, rather than pursue the possible rights of the putative class members.

There is one significant feature of the situation, however, which could be called "collusion." There are in fact a few unnamed putative class members known to counsel. Though it is not a formal written part of the settlement itself, plaintiff's counsel wrote defense counsel before the final settlement promising not to pursue any more Title VII claims against defendant on behalf of the putative class members. *This includes even those class members whom they have consulted with or advised during the preparation of this case and its progress through the court!* In other words, the settlement embraces more on the side than it appears to embrace on its face. Moreover, although the second lawyer of the two-man firm representing the class had had some contact with would-be class members, he did not come forward to enlighten the court as to the facts or the merits of the possible claims of even those other putative class members he had dealt with.

From the incomplete information supplied by counsel, I make specific findings as follows:

1. The proposed arrangement provides no financial profit to the lawyer except such profit as lies in getting rid of an expensive and possibly losing case without the investment of any more time and energy.

2. Other employees did know about the case and talked with at least one of the lawyers; these employees may very well have been reasonably relying upon the case to protect their interests.

3. An undertaking by plaintiffs' lawyers not to represent any more potential claimants, including people with whom they had already conferred, is a type of collusive conduct which can have no purpose or result except prejudice to putative class members, regardless of the technical question whether the future inaction by these lawyers was bargained for and paid for by the defendant.

Under the circumstances, there is no way this court can satisfy the Circuit Court mandate, nor its duty to the litigants, nor its duty under Title VII, the remedial statute, except to require as a matter of discretion that notice of the settlement be given to the class.